[Civ. No. 13850. First Dist., Div. One. Apr. 15, 1949.]

LOUIS CRILLO, Respondent, v. LAURENCE CURTOLA
et al., Appellants.

Joseph L. Alioto and Robert J. Drewes for Appellants.

Myron Harris, R. J. Darter and John Jewett Earle for Respondent.

PETERS, P. J.—Plaintiff was hired by defendants to work for them for a period of two years at a salary of $700 per month. After working and being paid for about nine months he was discharged. This action was then brought for breach

of contract. Plaintiff was awarded a judgment for $9,300, which is the amount of his salary accruing during the portion of the two-year period during which he was unpaid, less $1,375 actually earned by him in other employments during that period. Defendants appeal.

In 1944, and for several years prior thereto, plaintiff was employed as chief steward at San Quentin Prison. In December of that year he was visited by one of the defendants, Laurence Curtola, who wanted to discuss with him the possibility of employment with the Curtola Company, a partnership. This company was then engaged in various businesses, including the operation of a group of restaurants. After some discussion, according to plaintiff, Laurence Curtola offered to plaintiff the position of manager of a restaurant near MacArthur Boulevard in Oakland which Laurence proposed to buy. The original proposition was that plaintiff was to be paid a salary until Laurence recovered the amount of his investment, and then plaintiff was to be given a half interest in the business. Plaintiff accepted this oral offer, and, in reliance thereon, quit his job at San Quentin in January of 1945. A short time thereafter he was informed by Laurence that the MacArthur deal had not materialized, but that the partnership had purchased the Capri Restaurant in Oakland, and would employ plaintiff as manager at $700 per month until such time as Laurence purchased another restaurant, when the original deal whereby plaintiff would ultimately receive an interest in the business would be revived. Plaintiff accepted this modification and went to work as manager of the Capri Restaurant shortly before February 1, 1945. He made several requests of Laurence for a written contract, and on February 14, 1945, was handed a letter which reads as follows:

"February 1, 1945

"Dear Louis,

"Please consider this an authorization to work for The Curtola Company, as dining room and bar manager, and to undertake other duties that may be necessary during the course of our normal restaurant operations.

"Your salary will be $700 per month. Your employment is to start February 1st, 1945, and shall continue for a period of two years to February, 1947. It is understood, of course, that you will devote the time necessary to perform your duties diligently to the advantage and satisfaction of The Curtola Company. During this period your work will be carried

under my supervision. I am certain that we shall have a very pleasant relationship and that it will prove to be our mutual benefit.

> Yours very truly,
> CURTOLA COMPANY
> By LAURENCE CURTOLA
> Laurence Curtola"

A day or two later plaintiff delivered to Laurence a letter reading as follows:

> "San Quentin, California
> February 15, 1945

"Mr. Laurence Curtola
 Curtola Company
 2209 Telegraph Avenue
 Oakland 12, California

"Dear Laurence:

"This letter acknowledges receipt of your letter contract of February 1, 1945, in which you hired me for the period of two years starting February 1, 1945, at Seven hundred Dollars ($700.00) a month under certain conditions which you set forth.

"I accept said employment by you and your company and I assure you that I shall do everything in my power to make the relationship not only pleasant but also mutually profitable.

> Very truly yours,
> LOUIS CRILLO
> Louis Crillo"

Plaintiff testified that during February, 1945, he acted as sole manager of the restaurant and bar, and that during that month they were operated at a profit; that in March of 1945 the defendants hired another employee, Pierre Coste, former chef of the St. Francis Hotel, and placed him in charge of the kitchen, and of all purchases for the kitchen and bar; that from that time on plaintiff was prevented from controlling those portions of the restaurant and personnel; that from March until October, 1945, when plaintiff was discharged, the restaurant and bar were operated at a loss; that plaintiff frequently complained to Laurence that he could not keep costs down because a large portion of his control had been taken from him and given to Pierre; that defendants failed to take any steps to restore this control. On October 9, 1945, plain-

tiff was discharged by Laurence and given two weeks' pay. Plaintiff claims that his discharge was legally unjustified. Much of plaintiff's evidence was corroborated by Jack Doritty, bookkeeper for the Curtola Company, who testified as to several conversations in which plaintiff requested restoration of his power of control over the kitchen personnel and over purchases, and in which Laurence promised to rectify the situation, but never did. Plaintiff also introduced evidence to show that the losses suffered by the Capri Restaurant from March to October were materially increased because of extensive remodelling and alterations undertaken by defendants over which plaintiff had no control. In this connection plaintiff attacked the various monthly reports prepared by defendants' accountants showing very large losses during these months, claiming that many items properly chargeable to renovation were charged to cost of operation. Laurence testified that his displeasure with the financial condition of the restaurant was caused by the increase in food and bar costs and was unaffected by the costs of remodelling.

Most of defendants' testimony was aimed at showing that plaintiff was inefficient, was unable to manage the restaurant, and did not have the cooperation of the employees. In this connection defendants introduced a considerable amount of testimony, mainly that of Laurence, that the employees threatened to quit if plaintiff remained as manager; that plaintiff was often unkempt and unshaven on the job; that plaintiff occasionally failed to lock the outer doors at night; that at least on one occasion he locked in an employee; that he insulted customers and the employees; that he induced defendants to hire an ex-convict who had been convicted of statutory rape by misinforming defendants as to the nature of the conviction; that he failed to inform appellants that another ex-convict recommended by him had two prior convictions and was subject to deportation orders. Plaintiff denied categorically all of these charges. It was the theory of defendants at the trial that, under the written contract, plaintiff was required to perform his duties to the personal satisfaction of defendants, and that the only issue involved was whether their expressed dissatisfaction was in good faith. The above evidence was offered to prove their contention that their dissatisfaction was in good faith.

Early in October, 1945, Laurence told plaintiff that he was through as manager of Capri, but offered him the position of working chef at the same salary at one of defendants' res-

taurants in Vallejo. Laurence told plaintiff that he could have two weeks with pay to decide whether he wanted to take the Vallejo job. Plaintiff vigorously protested being relieved of his duties at the Capri, but finally said that he would consider the Vallejo job if he could secure membership in the union. Subsequently he was informed by a member of the union at its headquarters in Vallejo that the union would not consider taking him in as a member. Plaintiff communicated this fact to Laurence and offered to continue at Capri. Laurence thereupon told him he was ''through.''

Plaintiff was paid by defendants until October 23, 1945. Between that date and February 1, 1947, plaintiff earned, at other employments, the sum of $1,375. The judgment of $9,300 is the full salary from October 23, 1945, to February 1, 1947, less $1,375.

The findings of the trial court are based primarily on the evidence produced by plaintiff. All major conflicts were resolved in his favor, the findings being based upon the evidence produced by him, and summarized above. On the basic issues of the intent of the parties, the meaning of the contract, and the circumstances surrounding plaintiff's dismissal, the court found: ''That at no time prior to February 14th, 1945 did plaintiff and defendants agree that plaintiff should perform his duties as an employee of defendants to the advantage and satisfaction of defendants''; that plaintiff undertook his duties as manager of Capri on February 1, 1945; that, after defendants hired Pierre Coste on March 15, 1945, and placed him in charge of purchases and of the kitchen, the plaintiff ''was prevented from purchasing supplies for said restaurant and bar and was prevented from controlling exclusively the selection and dismissal of kitchen help''; that from March 15, 1945, to August of that year the costs of the restaurant and bar operation greatly increased and the restaurant and bar were operated at a loss during this period; that plaintiff made frequent requests to be restored to exclusive control of the restaurant and bar, and frequently told defendants that he could not control costs of supplies and labor unless he had such control; that Laurence Curtola, on such occasions, told plaintiff not to worry and that the situation would be adjusted, but it never was; that defendants did not purchase another restaurant as promised, and did not restore plaintiff's exclusive control; that extensive alterations and repairs were undertaken by defendants over which plaintiff had no control; that all bookkeeping was under the control of defendants;

that the monthly statements following February, 1945, showed a loss; "that defendants were dissatisfied with the losses and blamed plaintiff in part for said losses; that said dissatisfaction of defendants existed in good faith although defendants at no time subsequent to March 15th, 1945 restored plaintiff to the position of having sole responsibility for the management of the said restaurant and bar"; that as a result of the limitations placed on plaintiff's authority "plaintiff was prevented by defendants from performing duties as dining room and bar manager to the advantage and satisfaction of defendants"; that plaintiff "devoted the time necessary to perform his duties diligently to the advantage and satisfaction of defendants"; that all during the contract period plaintiff was ready, able and willing to perform all services required under the contract; that all during the contract period "plaintiff devoted the time necessary to perform his duties as dining room and bar manager diligently to the advantage and satisfaction of defendants. That during said time plaintiff devoted the time necessary to perform his said duties diligently and did perform his said duties diligently.

"That the written contract of employment between plaintiff and defendant[s] required plaintiff to devote the time necessary to perform his duties as dining room and bar manager diligently to the advantage and satisfaction of defendants. . . . That it was the intention of plaintiff and defendants that plaintiff should be required to devote the time necessary to perform his duties as dining room and bar manager diligently to the advantage and satisfaction of defendants. That it was not the intention of plaintiff and defendants that plaintiff should be required to perform his duties as dining room and bar manager to the advantage and satisfaction of defendants"; that by reason of the limitations imposed by defendants upon plaintiff's authority "plaintiff was prevented by defendants from performing his said duties to the advantage and satisfaction of defendants. That any disadvantage to defendants [and] . . . any dissatisfaction experienced by defendants resulted from circumstances beyond plaintiff's control."

The evidence is uncontradicted, and defendants admit, that plaintiff, from February to October, 1945, spent long hours at the restaurant, and that defendants at no time were dissatisfied with the time spent by plaintiff on the job.

The primary question presented on this appeal is the proper interpretation of the following sentence appearing in the letter of defendants: "It is understood, of course, that you will de-

vote the time necessary to perform your duties diligently to the advantage and satisfaction of The Curtola Company." As will be noted, the trial court interpreted this to mean that the parties intended that plaintiff was required to devote the necessary *time* to his duties and did not intend that such duties had to be performed to the *satisfaction* of defendants. Defendants strenuously argue that this clause was clearly a "satisfaction" clause and was so intended by the parties; that the question of interpretation here involved was one of law, and if one of fact is unsupported by the evidence and is wrong as a matter of law; that such interpretation is contrary to the conduct of the parties and was first suggested by the trial court. The importance of this question is apparent. It is the law of this state that a contract requiring performance to the "satisfaction" of the employer is breached when the employer is in good faith dissatisfied, regardless of whether a reasonable man would or would not have been dissatisfied. The good faith determination of the employer that he is dissatisfied is conclusive on the employee. (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700 [182 P. 428, 6 A.L.R. 1493] ; *Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340 [39 P.2d 838] ; *Coats* v. *General Motors Corp.*, 11 Cal.2d 601 [81 P.2d 906] ; *Schuyler* v. *Pantages,* 54 Cal.App. 83 [201 P. 137] ; see cases collected 6 Cal.Jur. § 249, p. 417, and see anno., 6 A.L.R. 1497.) Here the trial court has found that defendants were dissatisfied with plaintiff's services and that such dissatisfaction existed in good faith, but has also found that the dissatisfaction existed because plaintiff was prevented from performing because defendants refused to give plaintiff the authority he should have had under the contract. To apply the "satisfaction" rule to such a factual situation would be most unjust, and this was undoubtedly one of the reasons that induced the trial court to interpret the contract as was done. The evidence supports the findings that defendants took from plaintiff the authority over the purchase of supplies and over the kitchen personnel and refused to restore these powers to him. The evidence shows that defendants were dissatisfied largely because the cost of supplies and the cost of labor so increased that a loss was incurred. This was the major cause of the dissatisfaction. Obviously, justice requires that the contract should be interpreted, if reasonably possible, so as not to permit defendants to create the situation that gave rise to their dissatisfaction, refuse to remedy such situ-

ation, and then fire plaintiff because they were ''dissatisfied'' with his failure to produce a profit. It is very doubtful whether the ''satisfaction'' rule should apply to such a situation.

However, independently of this point, we think the trial court's interpretation is supported by the evidence, and is therefore binding on this appeal. The rules applicable to the powers of the appellate court in passing on the construction of a written instrument are well settled. When the question is simply one of construction of a written instrument, unaided by evidence, the question is one of law and not of fact, and the appellate court is not bound by a reasonable construction of the instrument if it believes another construction should be applied. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825] ; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685] ; *Moore* v. *Wood*, 26 Cal. 2d 621 [160 P.2d 772] ; *Moffatt* v. *Tight*, 44 Cal.App.2d 643 [112 P.2d 910] ; *Texas Co.* v. *Todd*, 19 Cal.App.2d 174 [64 P.2d 1180] ; *Estate of O'Brien*, 74 Cal.App.2d 405 [168 P.2d 432] ; *La Lumia* v. *Northern Cal. Packing Co.*, 75 Cal.App.2d 917 [172 P.2d 94].) But where extrinsic evidence of intent has been introduced and where the evidence or inferences therefrom are conflicting on the question, the issue is one of fact. In such case the finding of the trial court, if based upon and consistent with the evidence, is binding on the appellate court. (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665] ; *Johnston* v. *Landucci*, 21 Cal. 2d 63 [130 P.2d 405, 148 A.L.R. 1355] ; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576 [300 P. 34] ; see many cases collected and commented upon 4 Cal.Jur. 10-Yr.Supp. (1943 Rev.) § 192, p. 144.) It is this last rule that is here applicable. There was evidence of the intent of the parties introduced independently of the document itself. Thus, there is the evidence of the circumstances surrounding the execution of the letter. In the preliminary negotiations of the parties it was never suggested that plaintiff was to be employed under a contract that if the defendants became dissatisfied for any reason they could fire the plaintiff. The plaintiff had a position with the state. This he gave up to accept defendants' offer. No reasonable man would terminate such a position and accept another where the employer could fire him at any time if he became dissatisfied, even though the employer created the cause of the dissatisfaction. When plaintiff insisted upon a written contract he did so upon the ground that ''I have to quit my position, and I want to know where I

stand.'' Yet, if defendants' interpretation be correct the plaintiff was getting no reasonable security at all.

The most significant evidence on intent is to the effect that after plaintiff insisted, on several occasions, that he wanted a written contract, defendant Laurence Curtola stated to plaintiff: ''I will tell you, Louis, I am going to give you the same kind of a contract I give Pierre [Coste].'' Laurence admitted that he told plaintiff ''I will give you a contract on the same basis I gave Pierre.'' Laurence told plaintiff to secure Pierre's contract, which plaintiff did, and it admittedly was the basis of plaintiff's contract. In that contract the controversial clause is quite different from that in plaintiff's contract. It reads: ''It is understood, of course, that you will devote the time necessary to perform your duties diligently to the advantage of the Curtola Company.'' This clause cannot be reasonably construed as a ''satisfaction'' clause at all. It is quite clearly a covenant on the part of the employee to spend the time necessary properly to perform his duties. Defendants were unable to explain why the word ''satisfaction'' was used in plaintiff's contract and not in Pierre's. Both sides admit that they intended that plaintiff's contract should be the same as that of Pierre's. This is strong evidence that the parties did not intend plaintiff's contract to be one for the satisfaction of defendants, but intended the disputed clause to provide for the time to be spent on the job. This evidence supports the finding of the trial court. In addition, it must be remembered that the letter was drafted by defendants and therefore should be construed most strongly against them. (Civ. Code, § 1654.)

Defendants contend that the challenged construction is contrary to the theory upon which the case was tried. At the close of plaintiff's case defendants moved for a nonsuit, and in ruling on that motion the trial court clearly suggested the possibility of construing the contract in the fashion it later did in the findings. Thus defendants had full opportunity to meet the issue, but offered no other evidence of intent, and yet admitted that there was no dissatisfaction with the time plaintiff spent on the job.

Defendants refer to various code sections relating to the interpretation of contracts (for example, see Civ. Code, §§ 1641, 1643), and contend that the challenged construction violates the rules set forth in these sections. ▮ The primary rule of construction is to ascertain, if possible, the intent of the

parties. Here the intent has been determined from extrinsic evidence, and such determination is binding on this court.

■ Defendants next contend that, regardless of the proper interpretation of the contract, they were justified in discharging plaintiff for cause, and complain of the fact that no express finding was made on this issue. There can be no doubt, of course, that where a contract is for a fixed period the employer may legally discharge an employee for good cause. (*May* v. *New York M. Picture Corp.*, 45 Cal.App. 396 [187 P. 785]; Lab. Code, § 2924.) There is no doubt that defendants produced evidence from which the trial court could have found justifiable cause for discharge. But such evidence was directly contradicted by plaintiff. While it is true that the trial court made no specific finding as to whether the discharge was justifiable, there are several findings that clearly indicate that, had such a specific finding been requested (it was not), it would have been adverse to defendants. Thus, the following language appears in the findings:

\*C.T. 17:23*—"That during all of the two year period . . . plaintiff was ready, able and willing to perform all services on his part to be performed under the terms of the contract with defendants."

*C.T. 17:26*—"That . . . plaintiff devoted the time necessary to perform his duties . . . diligently to the advantage and satisfaction of defendants . . . and did perform his said duties diligently."

*C.T. 18:21*—"That any disadvantage . . . [and] dissatisfaction experienced by defendants resulted from circumstances beyond plaintiff's control."

*C.T. 18:26*—"That the discharge of plaintiff from his employment was wrongful . . ."

Failure to make a more specific finding on this issue was not prejudicial error. (See *Vaughan* v. *Roberts*, 45 Cal.App. 2d 246 [113 P.2d 884]; cases collected 24 Cal.Jur. § 187, p. 942.)

It is next urged that the award of damages was erroneous in three respects:

■ 1. That defendants' offer to employ respondent as chef in the Vallejo restaurant at the contract salary mitigated all damages. Plaintiff's contract called for his employment as dining room and bar manager—a supervisory position entailing no manual labor. Plaintiff testified that the Vallejo job was offered him on condition that he put on an apron "and get behind the stove and get to work and don't duck it.

You go in and work." The general rule is well settled that an employee is not obliged to seek or to accept other employment of a different kind in order to mitigate damages. (*de la Falaise* v. *Gaumont-British P. Corp.*, 39 Cal.App.2d 461 [103 P.2d 447] ; see cases collected 28 A.L.R. 736.) Anything said to the contrary in *Ryan* v. *Mineral County High School Dist.*, 27 Colo.App. 63 [146 P. 792], referred to by defendants as a "leading case on the question" is erroneous and contrary to the overwhelming weight of authority.

2. That plaintiff was not entitled to any damages for the six-month period he operated his own restaurant at a loss. The evidence shows that during six months of the time the trial court has allowed damages, plaintiff operated his own restaurant and withdrew from the venture but $200, which sum was deducted from the total salary due in the award of damages. The theory of the defendants is that plaintiff should have allowed himself a salary during this period to be computed in mitigating damages, and that defendants cannot be charged with plaintiff's inability to operate his project at a profit. *Kramer* v. *Wolf Cigar Stores Co.*, 99 Tex. 597 [91 S.W. 775], is cited in support of this contention. That case stands for no such general principle. The Texas court properly held that damages should be diminished by the amount the discharged employee took from his own business during the contract period, and then added that, under the "peculiar" facts of that case, there might be taken into consideration the fact that the services of the employee in running his own business might be of greater value than the amount actually withdrawn, inasmuch as the business was still in operation, and part of the services rendered during the contract period added to the general value of the business and so would reward the employee at a future date. That is not this case. Here the business was operated and closed up before the end of the contract period. There is no possibility of future income for services rendered during that period. The exact amount actually earned can be computed. There are no "peculiar" or other facts that would have justified the trial court in disregarding the general rule, which is, that the measure of damages for breach of an employment contract for a fixed period is the difference between the amount earned in fact and the amount that would have been received under the contract. (See cases collected 8 Cal.Jur. § 46, p. 787.)

3. That plaintiff was not entitled to damages for the

final six months of the contract period during which he did not work at all. The evidence shows that prior to this six-month period plaintiff had been working at "Victor & Roxies" and that he left because of illness, and did not return. Defendant urges that inferentially this evidence indicates plaintiff could have returned to this employment, and that, at any rate, all of 1946 was a period of high employment and high wages, so that plaintiff could have secured work had he tried. *Flickema* v. *Henry Kraker Co.*, 252 Mich. 406 [233 N.W. 362, 72 A.L.R. 1046], is cited as supporting the claimed rule that, under such circumstances, plaintiff is entitled to no damages for this period. The case stands for no such proposition. That case states the general rule that the burden of proof is on the employer to show that the employee could, by diligence, have obtained employment, but holds that the employer met that burden by proof that he offered to reinstate the employee in the same position from which he had been discharged at the same salary. The general rule, followed in California, applies here. It is also the law of this state that the employee is not required to show that he made a good faith effort to secure employment and failed. (*Rosenberger* v. *Pacific Coast Ry. Co.*, 111 Cal. 313 [43 P. 963].) The trial court has, in effect, found that defendants did not sustain their burden. Its conclusion is binding upon us.

 Defendants make various contentions concerning the admission and exclusion of evidence. Thus it is urged that all the testimony and evidence concerning the MacArthur restaurant transaction should have been excluded for the asserted reason that that was a different transaction unconnected with the transaction here involved. Such evidence was clearly relevant to the issue of good faith, which was one of the issues before the court, and it was upon this theory that this evidence was admitted. The evidence was also relevant and material to the question of the proper interpretation of the contract and to the question of intent.

 Complaint is also made of the admission over objection of Warden Duffy's testimony concerning the duties and responsibilities of the plaintiff while at San Quentin. The evidence was admissible on the issue of good faith and intent. Moreover, defendants testified that the job in Oakland was too big for plaintiff, and this evidence controverted that evidence.

The last point necessary to discuss is the correctness of the trial court's refusal to pass upon defendants' motion for a new trial. The trial ended December 2, 1947. On December

10, 1947, the county clerk mailed defendants a notice stating that in the case of *Crillo* v. *Curtola* "judgment in favor of plaintiff in the sum of $9300.00," plus interest. On December 15, 1947, defendants filed their notice of intention to move for a new trial. The record shows that the findings of fact and conclusions of law "were done in open court this 10th day of December and signed this 31st day of December, 1947." The trial court ruled that defendants' motion was a nullity because filed prematurely before findings were signed.

The rule in this state is that a premature notice of intention to move for a new trial is void for all purposes. (Code Civ. Proc., § 659; *Tabor* v. *Superior Court*, 28 Cal.2d 505 [170 P.2d 667]; *Reeve* v. *Jahn*, 9 Cal.2d 244 [70 P.2d 610]; *Fong Chuck* v. *Chin Po Foon*, 29 Cal.2d 552 [176 P.2d 705]; *Estate of Barker*, 207 Cal. 112 [276 P. 992]; *Root* v. *Daugherty*, 201 Cal. 12 [255 P. 181].) Under the rules announced in these cases until the findings are actually signed and filed there is no decision of the court, and, until there is a decision, a notice of intention to move for a new trial is a nullity, and the trial court is without jurisdiction to hear a motion prematurely filed. The rule no doubt is a harsh one but the remedy, if one is needed, must lie with the Legislature. No sound legal reason has been suggested as to why the rule as it now exists is not here applicable.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied May 14, 1949, and appellants' petition for a hearing by the Supreme Court was denied June 13, 1949. Schauer, J., voted for a hearing.