[Civ. No. 7976.  Third Dist.  Nov. 14, 1951.]

JOHN M. HALL, Appellant, v. RALPH HAGERMAN, Respondent.

Riggins, Rossi & King for Appellant.

Ralph Trower for Respondent.

VAN DYKE, J.—On July 22, 1947, the parties hereto became copartners under written articles. The business of the firm was the wholesaling and retailing of candy, nuts, gum and allied lines of merchandise. The business centered in Napa and involved three sales routes for the covering of which the partnership had three trucks, two driven by the copartners and one by an employee. On July 23, 1948, the partners executed a document entitled "Agreement for Dissolution of Partnership," and this action arose out of the varying interpretations which the parties thereto placed upon that instrument. The action was begun by Hall who filed a complaint against Hagerman in the form of a common count for money had and received, claiming recovery of the sum of $1,347.90. No mention of the partnership was made in that pleading. Hagerman answered, denying generally the common count allegations of the complaint. He also counterclaimed for money had and received, seeking recovery of $96.54. He cross-complained for the same amount and in that pleading he alleged the execution of the articles of the copartnership and the execution of the dissolution agreement, attaching both documents to his pleadings as exhibits. He declared that by the dissolution Hall had received assets exceeding in value in the amount sued for those he had received. In his prayer, he also asked that an accounting be had of the partnership affairs. It is well at this point to refer to the well established rules that an action at law by a partner or copartner ordinarily will not lie on a claim growing out of the partnership transactions until the business

is wound up and the partners' affairs finally settled (68 C.J.S. 550); that if an action between partners is for a balance due, the complaint must aver a settlement of firm affairs and a determination of the amount owing by defendant to plaintiff; but that if the action is for money received, based on the theory that a final settlement has been had, a complaint in the form of a common count need not allege that there had been an accounting or settlement of the partnership affairs (*Id.* 565), and, finally, that an action upon a common count for money had and received proceeds upon the theory that a final settlement has been made. (*Crudo* v. *Guida,* 43 Cal. App.2d 26, 29 [110 P.2d 109].) It is thus apparent that plaintiff by pleading in common count for money had and received, without mention of the past existence of the partnership between himself and the defendant proceeded upon the theory that a dissolution had occurred and a final settlement and distribution of assets had been arrived at. What the theory of defendant and cross-complainant Hagerman was is not so clear, for he did pray for an accounting, a relief consistent only with the nonoccurrence of any settlement of partnership affairs.

At the trial the plaintiff placed in evidence the agreement for dissolution and sought by the interpretation which he placed upon the document to sustain his cause of action. It was at once apparent from that document that it contained many inconsistencies and was fraught with much ambiguity. There is practically no contention by either party that the court did not need evidence of the circumstances attendant upon its execution in aid of its interpretation. Such evidence was therefore taken and the trial court construed the document as having constituted not only an agreement for the dissolution of the partnership but also an agreement for final settlement of partnership affairs and for the distribution between the partners of the assets of the partnership with one contingency, which was that if by the immediate sale of certain partnership assets received by defendant Hagerman he should realize a substantial profit or increase over the amount at which the partners had valued these assets, then he was to make a further division of the profit or increase so derived, turning over one half of it to plaintiff Hall. The court found, however, as to this contingency that no such profit had been realized and therefore adjudged the plaintiff was to take nothing. The trial court also disallowed the claim of defendant Hagerman for the sum sued for by counterclaim and cross-

complaint and denied Hagerman's prayer for an accounting. Plaintiff Hall has appealed. Defendant and cross-complainant Hagerman has not.

The question on appeal is whether or not the trial court's interpretation of the contract finds support in the instrument itself, as that interpretation is aided by the evidence taken. The rules by which we are guided in the solution of this problem are well stated in such cases as *Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17], *Crillo* v. *Curtola*, 91 Cal.App.2d 263, 272 [204 P.2d 941], and *Nuland* v. *Pruyn*, 99 Cal.App.2d 603, 609 [222 P.2d 261]. We need not restate those rules here. Appellant makes some further contentions which will be stated and disposed of later. The written agreement for dissolution contains many contradictions among its terms and is affected by much ambiguity. We think it must be quoted. It reads as follows:

"AGREEMENT FOR DISSOLUTION OF PARTNERSHIP

"THIS AGREEMENT made and entered into in duplicate this 23rd day of July, 1948, by and between RALPH HAGERMAN of Napa, California, party of the first part and JOHN M. HALL of the same place, party of the second part,

WITNESSETH :

"That said parties and each of them have mutually agreed and do hereby agree to a dissolution of the partnership entered into by and between them on the 22nd day of July, 1947, and which business has been heretofore conducted by them under the name of HAGERMAN and HALL. It is understood and agreed upon the execution of these instruments that the party of the second part is to receive and is entitled to withdraw from the bank account of said business heretofore conducted by them as above set forth the sum of One Thousand Six Hundred Eight and 30/100 Dollars ($1,608.30), and the party of the first part shall be entitled to withdraw the sum of One Thousand Dollars ($1,000.00).

"The party of the second part shall be also entitled to receive, accept and collect all accounts receivable owing to said co-partnership and the said accounts receivable are hereby fixed and established in a sum of Four Hundred Fifty-seven and 74/100 Dollars ($457.74) ; second party is also entitled to receive and to dispose of one (1) Chevrolet truck and one (1) Ford truck belonging to said co-partnership and to receive and keep the proceeds derived on the sale of the same.

"IT IS UNDERSTOOD AND AGREED that each of said parties

did upon the commencement of said co-partnership invest the sum of Five Thousand Seven Hundred and Fifty Dollars ($5,750.00) in said business, and it is the desire and intention of each of the parties hereto that they and each of them shall receive from said business on the dissolution thereof and of said partnership the amount of their original investment plus any profit or proceeds derived on the sale of said business by the party of the first part.

"It Is Further Understood and Agreed that the accounts payable amount to the sum of Two Hundred Seventy-six and 72/100 Dollars ($276.72), which said amount the party of the first part agrees to assume and pay. The party of the first part is to keep the stock on hand belonging to said co-partnership which by mtual agreement is hereby fixed at Three Thousand Six Hundred Nine and 83/100 Dollars ($3,609.83), and in addition thereto he is to take over the unexpired insurance amounting to Ninety-eight and 65/100 Dollars ($98.65) and the prepaid rent in the sum of Forty Dollars ($40.00) and also one (1) Dodge truck belonging to said co-partnership, all of which shall be and become the property of the party of the first part on the dissolution of said partnership.

"It Is Further Understood and Agreed that the party of the first part is to try to effect an immediate sale of the business heretofore conducted by the parties hereto, and if and when said sale is effected the amount for which it is sold is to be added to the amount received by the party of the second part and the total is to be divided equally between them. It is further understood and agreed that a notice of this dissolution of partnership shall be published not less than twice in the Napa Register.

"In Witness Whereof, the said parties have hereunto subscribed their hands the day and year hereinbefore written.

(Signed) Ralph Hagerman
Party of the First Part

(Signed) John Hall
Party of the Second Part."

It is thus seen that unequivocally the parties agree by the document that the partnership is dissolved. This would, of course, lead to such liquidation proceedings as the parties might agree upon or as might be implied in law. It then goes forward, however, to state that Hall, appellant here,

is to receive $1,608.30 of the cash on hand, and Hagerman, the respondent here, is to receive the balance of $1,000. This unequal division, when the parties were entitled under the articles of copartnership to equal ownership indicates the beginning of settlement provisions. Appellant Hall is also to receive, accept and collect accounts receivable and is entitled to receive and dispose of two of the three trucks and to "keep the proceeds derived on the sale of the same." These are all terms of settlement. Then, skipping a paragraph, to which we will return, respondent Hagerman assumes and agrees to pay the accounts payable, but is to keep the stock on hand and to "take over" the unexpired insurance, the prepaid rent and the Dodge truck, all of which, says the agreement, "shall be and become the property" of Hagerman "on the dissolution of said partnership." These terms also are terms of final settlement and division of assets. But the paragraph we skipped is now to be considered, and it recites that the copartners had invested in the beginning each the sum of $5,750 and desired and intended that they should each receive on dissolution the amount of these original investments "plus any profit or proceeds derived on the sale of said business" by respondent Hagerman. And the concluding paragraph provided that Hagerman was to try to effect an immediate sale of the business and if and when he did so the sale price was to be added to the amount received by appellant Hall, and the total was to be divided equally between the parties. It is clear that these provisions are inconsistent with any logical interpretation of the other provisions we have referred to and indicate that no settlement had in fact been effected, but that the assignments of property were rather by way of allocation of duties of the two partners in liquidating the partnership.

█ Upon the face of the instrument we think that the conflict cannot be reconciled and the trial court of necessity took evidence of the circumstances surrounding the execution of the so-called dissolution agreement. We need only refer to those parts of the testimony taken which support the interpretation of the trial court. And so we find that respondent Hagerman testified that after the agreement was executed no consultations were had between himself and appellant concerning the operation of the business; that the name of the business was changed to that of "Hagerman Candy Company"; that notice of dissolution was published as provided for; that he alone sold the business some three months after

his take-over, during which time he had conducted it under the new name; that while he told appellant about the sale, no demand was made by appellant for any share of "profit" nor was any intimation given by appellant that he considered respondent to be continuing a partnership business after dissolution anticipatory to sale; that when he and appellant talked of dissolving the partnership appellant had come to him with a paper upon which he had made notations proposing a settlement; that by this appellant was to get the two trucks, the amount he later got from the bank account, and the accounts receivable, while respondent was to take the remaining truck, the stock on hand and assume the debts; and having agreed upon that they went to a Mr. Graves who drew up the agreement for them. Respondent further testified that the only reason the agreement was drawn up was to protect appellant in case he, respondent, would be able at once to sell the business "at a fine profit," $7,000 or $8,000 profit being mentioned. He testified he endeavored to sell the business, but he could not and was compelled to continue it until a sale could be effected. When asked if there was anything in those conferences about appellant sharing in any possible loss if respondent sold at less than the values mentioned in the agreement, he replied that there was not, but that he told Mr. Graves he "didn't want any figures in there" because he might not be able to sell at a profit, he might have to sell at a loss. The business was actually sold at less than the value of it as stated in the agreement. Respondent testified that two of the routes were abandoned when the trucks by which they had been worked were turned over to appellant and that he continued to drive the remaining route; that the sale he made was influenced as to price by his developing a bad knee with a dislocated cartilage which interfered with his ability to continue driving the truck on the route. We think that in view of the general trend of the agreement which we have noted and which is in favor of a construction of final settlement, the evidence is sufficient to support the court's interpretation that by this agreement the parties not only dissolved the partnership, but completely and finally settled its affairs and distributed its assets with the contingency heretofore mentioned as to further payment to appellant of the profit which respondent might make upon immediate sale.

Appellant contends further that the court erred in excluding from evidence a certain memorandum. During the course of the trial respondent on demand produced certain

business records wherein was found a lead pencil memorandum which it appeared had been made by respondent's wife and which it may be said would tend to show that the parties had not intended a final settlement, but had contemplated a division of assets after respondent should have sold the business. But the proof showed that the memorandum was not a business record, that Mrs. Hagerman was not the bookkeeper or in any way the agent of respondent, that she had no authority to bind him by the memorandum she wrote; and we think, therefore, that the trial court was justified in refusing to admit the memorandum in evidence. The memorandum is characterized by respondent as mere speculation and ''doodling'' indulged in by respondent's wife and we think this description is accurate.  █  Appellant further contends that the findings do not support the judgment. The rules by which the sufficiency of findings are to be tested and the rules for interpretation thereof where interpretation is needed are fully set forth in *Richter* v. *Walker*, 36 Cal.2d 634, 639 [226 P.2d 593], and we need not restate them here. Tested by these rules we think the findings are sufficient. The court found that respondent is not indebted to plaintiff in any amount for money had and received as alleged by plaintiff's complaint; that appellant was not indebted to respondent as claimed in respondent's counterclaim and that although there had been a partnership the same had been dissolved when the dissolution agreement had been signed and that by the dissolution agreement the parties had intended to distribute all the assets of the partnership, with the aforesaid contingency as to a profit upon the immediate sale of the business; that no such profit had been made. No demand for any more specific findings appears to have been made. Summarized, and given the benefit of proper implications, they are to the effect that the parties had dissolved their partnership and made a complete settlement and distribution of assets and therefore that neither had received any property or money for the use and benefit of the others.

The judgment is affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.