[Civ. No. 5783.   Fourth Dist.   Dec. 16, 1958.]

WARREN BARLOW, Respondent, v. GERALDINE S. COLLINS, Appellant.

Leonard A. Bock for Appellant.

Thurman Arnold, Jr., for Respondent.

GRIFFIN, P. J.—Plaintiff-respondent brought this action against defendant-appellant, in three separate causes of action alleging in general, breach of contract, breach of trust and for an accounting, and injunction. Therein, he alleged that beginning in the year 1948, up to 1956, excepting certain periods, plaintiff and defendant lived together as husband and wife, without the benefit of a marriage license or ceremony; that during these years they agreed to pool their earnings; that during that period they were both employed by third parties as a cook and waitress or were self-employed in the restaurant business as joint venturers or copartners; that they placed their joint earnings in a bank account in defendant's name for the benefit of both parties; that unhappy differences occurred between them about December 3, 1956, and defendant left with the proceeds; that plaintiff made demand upon her for his share of the proceeds or an accounting which was refused. An attachment was levied upon defendant's bank account. Judgment by default for $11,095 was given plaintiff. It was subsequently set aside and a temporary restraining order was dissolved. By stipulation the money attached was held by plaintiff's counsel in his trust fund account pending the outcome of the action. An execution levied on defendant's bank account in the total sum of the judgment was also set aside.

Defendant answered, admitted they lived together as such, between said dates, with the exception of certain intervals; denied any agreement to share any money; alleged she contributed more money to plaintiff's support than he contributed to hers; claimed plaintiff never gave her any money to deposit in the banks except the sum of $14,000 realized from the sale of a restaurant they jointly owned; and claimed that plaintiff retained one-half of this amount. She denied the other allegations of the complaint.

A pretrial hearing was had. Later the trial court found generally that the parties lived together as alleged; that they agreed to pool their earnings and share equally in their accumulations; that defendant agreed to deposit them in banks in her name for their joint benefit; that said agreement was independent of and not in consideration of either of them living with the other but was in the nature of a joint enterprise; that the sum of $13,753.80 represented such earnings and profits so accumulated in accordance with their agreement; that unhappy differences arose and defendant refused to account to plaintiff for his share; that certain money had

been deposited in certain specified banks and after allowing $7,000 to defendant (being a claimed inheritance from defendant's mother) as her separate property, a balance of $13,753.80 was jointly earned money and plaintiff was entitled to one-half of it or $6,876.90. Judgment was entered accordingly.

Defendant appealed and contends: (1) that the complaint does not state facts sufficient to constitute a cause of action for breach of contract; (2) that plaintiff was estopped from claiming equitable relief since he elected to proceed on the theory of breach of contract by reason of obtaining a writ of attachment; (3) that plaintiff is barred, under section 300 of the Labor Code, from asserting any claim to defendant's wages; (4) that plaintiff was barred by the statute of limitations from asserting any claim to her share in the profits or wages accumulated beyond the period prescribed by the statute of limitations; (5) that the evidence in support of the judgment is inherently improbable; and (6) that the findings do not support the judgment.

The main claim under this heading is that one partner may not maintain an action against his copartner for claims growing out of the partnership until after the partnership has been dissolved and an accounting has been had, citing such authority as *Hall* v. *Hagerman,* 107 Cal.App.2d 523 [237 P.2d 80]; *Martyn* v. *Leslie,* 137 Cal.App.2d 41, 61 [290 P.2d 58]; *Shearer* v. *Davis,* 67 Cal.App.2d 878, 879 [155 P.2d 708]; and *Martin* v. *Going,* 57 Cal.App. 631 [207 P. 935].

Under the first claim the complaint in the first cause of action did allege breach of contract and set forth in detail the particulars from which it was claimed such breach arose. It is true an attachment was levied but it was, before trial, dismissed or released. The second cause of action alleges a breach of trust and seeks an accounting. It incorporates the allegations of the first cause of action in support thereof. The court made general findings applicable to both counts. By obtaining the attachment there was no definite election of plaintiff to stand on the first count, as opposed to the election of the second count. Each stated similar facts and in substance the complaint stated a cause of action for claimed breach of an agreement to pool their earnings and profits. Such agreements have been held enforceable in protecting the interests of each in such property unless the contract is made in contemplation of such relationship. (*Bridges* v. *Bridges,* 125 Cal.

App.2d 359 [270 P.2d 69]; *Garcia* v. *Venegas*, 106 Cal.App.2d 364, 368 [235 P.2d 89]; *Bacon* v. *Bacon*, 21 Cal.App.2d 540 [69 P.2d 884].) ▪ The general rule is that if a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. Even in the absence of an express agreement to that effect, the woman would be entitled to share in the property jointly accumulated, in the proportion that her funds contributed towards its acquisition. (*Vallera* v. *Vallera*, 21 Cal. 2d 681, 685 [134 P.2d 761].) ▪ The pleadings were sufficient to state a cause of action in this respect.

▪ Defendant relies on the general rule that a partner may not sue his copartner in an action at law in respect to firm transactions until an accounting has been had. While this general rule is well established, a different rule or at least an exception to the general rule, has been quite generally recognized and has been indicated and applied in several cases in this state. The general rule is peculiarly applicable to claims for damages arising out of the manner in which a partnership business has been conducted and to breaches of said agreements as such. But the reasons for applying the general rule are less forceful where the wrongful acts complained of are not only a breach of contract but constitute a tort, and this is especially true where the tort is of such a nature that it not only terminates the partnership but wrongfully destroys it, and where the erring partner converts to his own use its entire assets. (*Laughlin* v. *Haberfelde*, 72 Cal. App.2d 780 [165 P.2d 544]; *Tufts* v. *Mann*, 116 Cal.App. 170 [2 P.2d 500]; *Keyes* v. *Nims*, 43 Cal.App. 1 [184 P. 695].)

Under the second claim plaintiff was not estopped from claiming equitable relief. (*De Hart* v. *Allen*, 49 Cal.App.2d 639 [122 P.2d 273].) ▪ Third, plaintiff was not barred from claiming his purported share of the profits and his earnings which were found in defendant's bank account under section 300 of the Labor Code. Defendant placed her earnings and profits in said account. She never parted with any of her money pursuant to the pooling agreement. There was no assignment of her wages in violation of that section and defendant could not equitably assert such claim. (*Cline* v. *Festersen*, 128 Cal.App.2d 380 [275 P.2d 149].) ▪ Fourth, this same conclusion applies to the claimed bar of the statute of limitations. Such a statute would run from the time of the breach or termination of the agreement or when the cause

of action accrues. (*Niles* v. *Louis H. Rapoport & Sons, Inc.*, 53 Cal.App.2d 644 [128 P.2d 50]; *Maguire* v. *Hibernia Savings & Loan Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062].) Fifth, while there were considerable contradictions of both parties in reference to their financial affairs it cannot be said that plaintiff's testimony was inherently improbable.

■ Sixth, the evidence and findings do support the judgment. Under this heading defendant makes numerous charges, including a claim that the court failed to take into account, in the accounting, and specifically failed to find as to the truth or falsity of defendant's statement that there was an item of $14,000 and several other claimed amounts which the parties had previously divided between them and that by again dividing her proportionate share of it, which was deposited in her bank account, defendant was being again charged for these earnings; that the court failed to specifically find as to whether the amount accumulated was from earnings or from profit, and failed to find when the agreement went into effect, whether it was effective during their separation of nearly two years, when she went away with another man, and as to who supported plaintiff for more than six months when he was unemployed; that a full accounting for loans, advances and contributions for the full period they were living together was not had, and that the court arbitrarily based its findings on what sums remained in her bank account at the termination of their agreement.

Plaintiff testified generally that he commenced living with defendant as man and wife in 1948; that he was separated from his former wife at the time and defendant knew he was not divorced from her; that he was then employed as a cook and bartender and defendant was employed as a waitress; that they agreed to pool their earnings after taking out expenses and he turned the balance over to defendant to handle and to keep for both of them; that she kept it in a bank account and safety deposit box in her name for several reasons, i.e., because of probable demands of his former wife and on account of his drinking problem; that they subsequently went into business together on several occasions under the same arrangements; that they both drank a little and he knew generally what they had saved and made. He itemized the amounts paid and received from such sales and operations and said that the bank account constituted about the only record of their transactions and earnings; that in 1951 they went to Arizona and defendant took the money and deposited it there in her name,

as before; that while there for the period of two years he was employed except for six months when he was away from employment because of a brawl in which he broke his leg; that defendant kept working; that they returned to California and they jointly went into business in Los Angeles; that he then opened up an additional separate bank account for himself (about $500), to pay for supplies and overhead; that they made about $14,000 that year; that together they bought $13,500 in war bonds, payable to her and on her death to plaintiff, from the money in her account; that equipment was purchased for other business enterprises in which they were jointly engaged; that they also purchased $300 in stock from said savings account; that in 1955 they "split up" and each had a separate apartment; that while she did not live with him, she came to his place nearly every night for two years; that he invested about $400 of his own money in another enterprise; that he was still giving his money to her to save for both of them even though she was working as a waitress at another place; that they went to Las Vegas in 1956 and lived together again as husband and wife under the same arrangement; that subsequently they went to Palm Springs and there they "broke up," due to his drinking; that all during that period they had a lot of "break-ups" each for a short time, and then they would resume their former status, both financial and otherwise; that one time she ran away with another man and was gone three or four weeks and on her return she told plaintiff she had no more money; that she said she had put up with him for a long time and he had nothing coming, and for him to "try and get it—sue me"; that he believed at that time she had between $22,000 and $23,000, and named the amounts and banks where this sum was deposited. He testified he never borrowed any money from her.

Savings account bank books of defendant were received in evidence and showed deposits and withdrawals over a two-year period. One showed a balance of $7,505.94 withdrawn on March 7, 1957; another a balance of $3,257.87 withdrawn on December 5, 1956; and a balance in another account of $2,360 on June 26, 1956. One showed a deposit of $10,000 on April 20, 1956, which was not withdrawn.

Defendant testified generally about their meeting and subsequent transactions. She said she left him about 50 times between 1948 and 1954, and she claims she had $7,000 of her own money from her mother's estate when she first met plaintiff, which she kept in the several banks named and in

a specific safety deposit box (The officer at the bank denied any record of such safety deposit box or accounts); that after paying expenses she placed their savings in their accounts in several banks, and invested some of her money in some of these business enterprises; that she profited on some and lost on others; that she considered her wages and earnings she made in Arizona as her own; that each of the parties came out with a profit of $4,000 on one sale in 1953; that she purchased war bonds totaling $9,700 with her money; and that in making some of these investments she loaned plaintiff money which he did not repay.

Defendant was confronted with her verified affidavit used in support of her motion to set aside the default. Therein she alleged she and plaintiff split $14,000 as a result of joint restaurant operations. She later said this was untrue, that it was only $4,000 that she made out of it. She testified that when they separated she had $10,000 in one bank, $8,500 in another, and $3,000 in another. She said they did not pool their earnings; that plaintiff kept his and she kept hers; that they had no agreement about pooling their earnings; that she helped support plaintiff during his illness in Arizona and at other times. She admitted having saved $22,000 at the time of the separation but claims $7,000 was her own money; that she gave plaintiff $2,000 the first six months she knew him, $2,900 to invest in the several businesses, and extra money to support himself.

Apparently there was some discussion at the pretrial hearing pertaining to a limitation in reference to the accounting, i.e., that the court, under the pleadings, did not desire to go into a complete accounting between the parties since they started living together but would limit it to the allegations of plaintiff's complaint. The complaint alleges the agreement to be that each party agreed to deposit his earnings and profits in bank accounts and each agreed to share such money as was deposited therein. Then follows the names of the banks and the amounts then on deposit. The prayer was for a division of the money in the bank accounts. From the evidence produced it appears that the court did, to a great extent, trace the money deposited to these accounts back to the time these parties started living together. A sharp conflict in the testimony of the two parties existed. Defendant testified as to a $7,000 inheritance, claimed to have been deposited in certain banks prior to this time. This testimony stands un-

corroborated. She produced no other evidence of such deposit or of such inheritance. In fact, the testimony of the officers of those banks negatives her claim in this respect. The court might well have believed that no such inheritance existed and that the money found in the bank account was the joint earnings and profits of the parties. However, it did give her credit for this sum. Under the pleadings no specific finding as to each item about which defendant testified was necessary. It did find that they did agree to pool their earnings, to share equally in the accumulations, and that the money deposited in the banks was to be shared equally, as indicated. It thereafter gave plaintiff $6,876.90. By inference, at least, the court found the allegations of defendant's answer to be untrue. The evidence fully supports the findings and the findings support the judgment. The other claims made do not appear to be meritorious.

Judgment affirmed.

Shepard, J., and Coughlin, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1959.

*Assigned by Chairman of Judicial Council.