WILLIAM M. VOGEL, Appellant, *v.* PATHE EXCHANGE, INC., Respondent.

Second Department, January 21, 1932.

*Nathan Burkan,* for the appellant.

*Frederic R. Coudert, Jr.,* for the respondent.

KAPPER, J. Plaintiff appeals from a judgment of the Supreme Court, Westchester county, entered upon a directed verdict in his favor for the sum of $24,395.91 with interest, and from an order denying his motion to set aside the verdict and grant a new trial.

The action is based upon an alleged unjustifiable discharge of an employee, and plaintiff's claim is for damages equivalent to the stipulated salary during the life of the contract, amounting to $61,538.

Under date of August 1, 1928, plaintiff and defendant entered into an agreement which had for its purpose, in part, the purchase by the defendant of a block of 2,040 shares of stock in a corporation named Producers International Corporation, of which stock the plaintiff was the owner. This contract recited the pendency of an action brought by plaintiff on his own behalf and that of other stockholders of said corporation against the defendant; and it is apparent that defendant's object was a termination of that litigation. Defendant agreed to pay $200,000 for said stock, $50,000 in cash and $150,000 in five installments of $30,000 each. It was further provided, as a part of the sales agreement, as follows:

" 14. Pathe agrees to employ Vogel as Manager of the Export Department and Vogel hereby agrees to accept such employment pursuant to agreement in the form annexed and marked Exhibit ' D.' "

The controversy arises under the language of said " Exhibit D." That document is the contract of employment referred to, and it is also in the record as " Schedule B," which is the executed contract. It is dated August 20, 1928, and in its inception provides:

" *First.* Pathe hereby employs Vogel in the capacity of its Manager of its Export Department, whether the same shall be conducted through a subsidiary corporation or otherwise, for a period of two (2) years, commencing on the 20th day of August, 1928, and ending on the 19th day of August, 1930, at a salary of Fifty Thousand Dollars ($50,000) per year, payable in weekly installments of Nine hundred Sixty-One Dollars and Fifty-four cents ($961.54) on Saturday of each week."

The next provision of this employment contract provides:

" *Second.* Vogel hereby accepts said employment and agrees to accept said compensation in full payment for all services to be rendered by him hereunder and agrees to devote his entire business time, attention and ability to the performance of his duties hereunder as said Export Manager and to at all times be governed in the performance of such duties by such rules, regulations, instructions and designation of duties as may from time to time be adopted or issued by the Board of Directors and the President and Vice-Presidents of Pathe, or subsidiaries specified above in Paragraph First."

There is then stated the agreement of Vogel " that during the period of his employment hereunder " he will not engage in any

business or undertaking or directly or indirectly accept employment other than that of the Pathe Company, but that nothing in the contract shall be construed as preventing Vogel from taking care of his personal investments or performing services necessarily incident to winding up the affairs and liquidating the contracts and disposing of the assets of certain corporations owned by him or in which he possessed the controlling interest. It is in the next provision of the employment contract that we have the legal debate presented. That provides:

" *Third.* In the event of any disability of Vogel for a period of sixty (60) days, preventing him from the performance of his duties hereunder, Pathe shall have the right to reduce the compensation of Vogel hereunder to Three Hundred Eighty-four Dollars Sixty-two Cents ($384.62) per week during the continuance of such disability, and in the event of Vogel's death or of the termination of this contract for any cause, Pathe in consideration of the agreement of even date herewith and as payment in addition to Eighty Dollars ($80.00) per share for the stock therein agreed to be sold by Vogel to Pathe, shall pay to Vogel or his estate the sum of Three Hundred Eighty-four Dollars Sixty Two Cents ($384.62) per week on the last day of each week during the unexpired term of this contract."

The performance of plaintiff's contract of employment commenced on its date, namely, August 20, 1928, and continued until May 29, 1929, when defendant's president told plaintiff that he had breached his contract and gave him written notice to that effect and that " accordingly [so the notice reads], your employment thereunder is terminated herewith." The further reasons assigned by the defendant's president, upon inquiry by plaintiff, were that plaintiff was doing some business in connection with certain motion pictures of which he continued the possession and ownership rights, and that whatever plaintiff was doing in that connection was accompanied by the use of defendant's facilities. Plaintiff's lawyer, two days later, received the following letter from defendant:

" PATHE EXCHANGE, INC.
" Executive Offices
" 35 West 45th Street
" New York

" *May* 31, 1929

" Mr. NATHAN BURKAN
" 1451 Broadway
" New York, N. Y.

" Dear Mr. BURKAN: I have your letter of May 31st and beg to say that contract between this Company and Mr. Vogel, dated

August 20, 1928, was the contract to which my notice to Mr. Vogel had reference; and I have corrected any technical irregularity in the form of the notice by delivering to Mr. Vogel today another notice of which copy is enclosed herewith.

"In response to your request for particulars as to the breach complained of I beg to say that, among other acts in violation of our contract with Mr. Vogel, he has for sometime past been engaged in business for his personal account in violation of said contract and has been using the services of certain employees of this Company and the services of certain of this Company's subsidiaries in foreign countries in the conduct of his personal business.

"Very truly yours,
"PATHE EXCHANGE, INC.,
"COLVIN W. BROWN,
"Executive Vice President."

These reasons for the termination of plaintiff's employment contract are not of present concern in the light of the disposition which the trial court made of the case. The plaintiff was the only witness examined, and it was at the close of his testimony that the view was taken by the trial court that this employment contract was terminable at will, and that all that plaintiff was entitled to during the remainder of the life of the contract was $384.62 per week, amounting to the sum of the directed verdict; the plaintiff, on the other hand, claiming that the discharge was unjustified and that he was entitled to the sum of $961.54 per week, the agreed upon salary.

As a matter of a brief background from which a construction of the contract must, it seems to me, be made, we have the plaintiff interested in the companies named in the employment contract. Those companies possess certain motion picture rights. It is, apparently, because of plaintiff's disposal or attempted disposal of his rights in those enterprises while the employment contract was in force that the defendant claims the right to discharge plaintiff. The employment contract specifically permits what plaintiff claims he was doing, that is to say, he was permitted to perform services incident to winding up the affairs, liquidating the contracts, and disposing of the assets of those corporations in which plaintiff had such personal interests. Whether he went beyond the reservation so stipulated would be a question of fact on the issue of justifiable discharge. It is not necessary here to spend any more time on the somewhat elaborate groundwork or background detailed by the plaintiff to show what led up to the compromise or settlement of his litigation and the getting of him out of the

way as a competitor of the defendant. That issue was not discussed on the trial. The motion of the defendant to dismiss asserted that the language in the employment contract, "or of the termination of this contract for any cause," subjected the plaintiff's rights to a termination of the contract at will, as matter of law, and that all that plaintiff was entitled to was the lesser sum of $384 a week during the remainder of the period of the employment contract. There ensued a very long colloquy as to the meaning and intent of this employment contract, and it culminated in the granting of defendant's motion, the learned trial justice expressing his views orally, stating, *inter alia*, that if plaintiff's right to general damages, that is to say, the larger sum, were dependent upon a wrongful discharge, and his receipt of the lesser sum would nevertheless go on if the discharge was justifiable, the contract would have to be read as one for the "*sole* benefit of the plaintiff;" and that plaintiff's construction required a holding that a justifiable discharge "would defeat the recovery of the stipulated lesser amount." Further, "in view of the situation as now presented, I think it must be held that the phrase 'for any cause' is an all embracing one, so far as its plain, everyday, ordinary meaning is concerned, and would include the severance of contractual relations by the act of the parties, or either of them. Accordingly I hold that the legal effect of the provision in question is that it made the contract terminable at the will of the parties, or either of them, and that, upon that event occurring, as it is proven it did occur here, the parties in substance agreed upon and stipulated that the defendant would then pay the plaintiff the sum of $384.62 per week for the unexpired term of the contract."

I am constrained to read this contract differently, for if this employment contract is to be read as one terminable at will, it may just as well never have been written. In the contract for the purchase of plaintiff's stock we have the agreement to employ plaintiff and plaintiff's acceptance of such employment pursuant to an agreement in the form set forth in the employment contract. That employment contract fixed the period of two years as its life and fixed the stipulated salary per week. It also required plaintiff not to engage in or participate in any business excepting on behalf of the defendant. It then provided for two things that would ordinarily terminate the contract as matter of law; one, disability, and the other, death. For both of these events there was an agreement to pay to plaintiff during disability the lesser sum even though that disability continued for the balance of the two years, and to plaintiff's estate in the event of his death a like lesser sum; but both of these were to be regarded "as payment in addition to

Eighty Dollars ($80.00) per share for the stock therein agreed to be sold by Vogel to Pathe." Did the parties intend by the words " or of the termination of this contract for any cause " to include it as one of the happenings which would carry with it the lesser sum only, in any event, when that lesser sum was stated as an additional consideration for the sale of the stock? If those words are to be construed as a right to terminate the contract at will, then this contract was conceived in fraud and there never was any contract of employment. Either plaintiff was employed for two years or he was not employed at all, as I view it, if the defendant reserved the right, before the ink of the signatures to the contract was dry, to tell the plaintiff, " We do not intend to employ you for two years as our export manager or in any other capacity." Hence, a rational reading of this contract seems to me to require that the words " for any cause " are to apply when cause sufficient in law which would justify an employer in discharging an employee is presented. In other words, the " termination of this contract for any cause " should be read as a cause that would legally justify a termination of the contract.

Moreover, the defendant by its discharge of the plaintiff for alleged breach of the contract, as expressed in its written notice to plaintiff and in its letter to plaintiff's attorney, has given a practical construction to this contract — that only by a justifiable discharge could the defendant terminate the contract; and in its answer to plaintiff's complaint this alleged breach by plaintiff is relied upon as a defense.

Much is said and may be said as to this lesser sum representing stipulated damages upon the termination of the contract for any reason, secret or disclosed; but, taking the context of the contract and the causes that led up to the making of both the contract of sale and the employment contract, it does not seem to me that the parties contemplated its abrogation at the whim of either at any moment subsequent to its making. I am in accord with the view of the learned trial justice that plaintiff's construction requires a holding that a justifiable discharge " would defeat the recovery of the stipulated lesser amount." If the plaintiff should " walk out " or abandon his job without right or reason, it would seem to me that his claim to the lesser sum would terminate because of his breach of the agreement to carry out this employment in good faith for two years. The same rule should apply to the defendant to the extent that an unjustifiable breach by it would afford the right to general damages. By that construction we give life to the entire contract and make it operative in the spirit of equity and justice.

The judgment and order should be reversed on the law and the facts and a new trial granted, with costs to appellant to abide the event.

LAZANSKY, P. J., YOUNG, SCUDDER and TOMPKINS, JJ., concur.

Judgment and order reversed on the law and the facts and a new trial granted, costs to appellant to abide the event.