# OLSEN v. ARABIAN AMERICAN OIL CO.

**Civ. No. 10524.**

United States District Court
E. D. New York.
May 21, 1951.

Sorenson & Miller, Lake Ronkonkoma, N. Y. (William R. Miller, Lake Ronkonkoma, N. Y., of counsel), for plaintiff.

Louis F. Huttenlocher, New York City, for defendant.

BYERS, District Judge.

This defendant's motion for summary judgment raises an interesting question of construction of a written contract dated October 15, 1949, whereby the plaintiff was employed as an airplane pilot by defendant, his services to be rendered in Saudi Arabia.

The complaint alleges that the hiring was on or about September 15, 1947, for a term of 24 months, but the copy of the contract attached bears the date above noted, and the minimum period is stated to be 30 months. These apparent discrepancies are not important to this motion; nor is there any apparent dispute as to the rate of compensation.

The question for decision is whether the defendant's termination of the hiring on or about July 5, 1948, was the exercise of a prerogative duly contracted for, or that it must be vindicated by the verdict of a jury based upon its view of the attendant circumstances.

The following are quoted from the agreement signed by both parties as of October 15, 1947:

A. The concluding paragraph reads: "Your application for employment, together with this letter of agreement, constitute the terms of your employment by this Company."

B. The application dated May 21, 1947, signed by plaintiff, contains the following: "Should I be given employment by you, either the position applied for (pilot), or some other, now or hereafter, I hereby agree that such employment may be terminated by you at any time, without liability to me for wages or salary except such as may have been earned at the date of such termination."

C. The said letter of agreement contains the following:

"The Company reserves the right to terminate your services at any time in any of the circumstances described hereunder:

"(a) You will be summarily dismissed, without notice and without return transportation and traveling expenses, for conduct which, in the opinion of the Management, would be detrimental to the best interests of the Company, for wilful neglect of duties, or for non-compliance with regulations; (NOTE. This clause was not resorted to, and is quoted for contrast with the following)

"(b) The Company may terminate your services for any other reason after departure from the continental United States upon payment of minimum return transportation and traveling expenses, salary for normal travel time to place of recruitment (New York), and upon payment of a sum equivalent to a minimum of four weeks' basic salary;"

The foregoing are all of the terms of the contract involved in this litigation.

The plaintiff's statement in his deposition (one of the records presented on this motion) is clearly to the effect that the termination of his employment was pursuant to (b) above, and that he had received all sums payable to him according to its terms.

The motion is contested by plaintiff on the theory that clause (b) is not to be distinguished from (a) in respect of the necessity for a showing that there was good and sufficient reason for its invocation, whereby a triable issue is exposed.

It is common ground that the question is to be determined under New York law, and it will be so assumed for present purposes.

The discussions found in cases cited in the respective briefs are not extremely helpful, as none deals with a type of employment in which a comparable poise of personal attributes—physical and mental—is required to be maintained in that sensitive balance which must characterize the successful navigator of aircraft.

In other words, it seems that a court is required to consider any matters which

may be peculiar to the services contemplated in a given case, in order reasonably to adjudicate such a contention as is here relied upon by the plaintiff, namely, that this employer was not to have the final say as to continuing the plaintiff's hiring for a fixed term, despite the contract provisions which have been quoted.

Thus, what might be deemed oppressive in reference to a salesman's contract, as in Carter v. Bradlee, 245 App.Div. 49, 280 N.Y.S. 368; or a contract for services of a manager of an export department incident to the sale of stock in settlement of litigation, as in Vogel v. Pathe Exchange, Inc., 234 App.Div. 313, 254 N.Y.S. 881; or a seemingly similar situation as in Parsil v. Emery, 242 App.Div. 653, 272 N.Y.S. 439, do not seem to apply to such a case as this. The same may be said of Laskey v. Rubel Corp., 2nd Dept., 277 App.Div. 1119, 100 N.Y.S.2d 877, 878, in which a plaintiff was denied relief where his employment was terminated before the expiration of the specified term, the contract providing that "the employment was terminable at any time at the option of the employer".

So also Dineen v. May, 149 App.Div. 469, 134 N.Y.S., 7, wherein a similar result was reached on a motion for judgment on the pleadings where the contract reserved to the employer the absolute right to discharge with or without reason.

In this case, it is thought that the parties contemplated and intended that the employer must be the final judge of whether to continue the hiring of an airplane pilot in the business enterprise clearly portrayed in the application and letter of agreement to which reference has been made.

This view is fortified by consideration of the plaintiff's argument to the contrary, which is understood to come down to this: The plaintiff was justified in complaining of the operation of the private airplane services as directed by his superiors, because they failed (as he asserts and they seemingly deny) to adopt certain precautions in the maintenance and navigation of the Company's planes, being those prescribed by the regulations of the C.A.A. touching foreign air commerce, and that those regulations necessarily governed operations in Saudi Arabia since those planes were licensed by the C.A.A.

Thus the plaintiff would have the jury pass upon the questions of whether the regulations did indeed apply to the defendant's said operations; and whether the regulations were adhered to, or the reverse; and whether the plaintiff was justified in protesting to his superiors on the subject, if he did; and the results of his protests; and finally, whether the fact that he may have made such protests was the true reason for terminating his employment; or whether in making unjustified complaints, if he did, he thereby demonstrated a lack of those qualities deemed by his employer necessary to the adequate performance of his contractual duties.

These considerations seem to be quite remote from the question of what the contract provides in clear terms, as to the employer's right to terminate the hiring within less than its stipulated duration.

If the Court were to be permitted to draw an inference from the situation as herein disclosed, it would be this: The Company was concerned in procuring pilots of demonstrated capacity to fly its planes as a private carrier in (to us) a remote and primitive part of the world. The process of selection was careful and consumed, as to the plaintiff, about four months. Having hired such a person, it transported him to the place of operation and agreed to pay for his services not less than $880.00 per month, and he functioned as contemplated for about six months.

It seems fairly obvious that the employer would rather retain a qualified and by then locally experienced pilot, than to dispense with his services at its own considerable cost as specified, and to procure a successor. If this is so, it would result that the defendant's election to terminate the plaintiff's employment was not a matter of indulging a whim, but of yielding to the promptings of seeming necessity. These are practical reasons, I think, for giving to the contract that effect which its plain terms require.

If this view is held to be clearly erroneous, and the case is sent back for trial on what are presently conceived to be irrele-

vant issues, at least the way will have been cleared of the legal controversy herein discussed, and the problems of the trial court will be simplified to that extent.

It should be said that the decision of Judge Galston, in overruling defendant's objections to certain questions propounded in the course of the taking of depositions, is not thought to have been intended to foreclose the decision of this motion for summary judgment in favor of defendant; that motion is hereby granted.

Settle order.