Gene Abbott, Appellant, and Bird A. Gallagher et al., Respondents, et al., Plaintiff, *v.* Hamilton Overseas Contracting Corporation, Inc., Appellant-Respondent.

Breitel, J. (dissenting in part). Plaintiffs, former employees, sued for wrongful discharge. All recovered a verdict for damages against the employer. As to plaintiff Abbott, the verdict was set aside and his complaint dismissed. As to the remaining plaintiffs, judgment was rendered in their favor. Defendant appeals from the judgment in favor of plaintiffs, and plaintiff Abbott appeals from dismissal of his complaint.

The court is in agreement that the disposition as to plaintiff Abbott should not be disturbed. There is disagreement with respect to the recovery in favor of the remaining plaintiffs. The majority has voted to affirm the judgment, while the view expressed herein is that the judgment in favor of plaintiffs should be reversed and their complaints dismissed.

Plaintiffs are a number of supervisory employees, who, under identical written contracts, had been engaged to direct construction work in the rehabilitation of a coal mine in Turkey. The contract is of a kind of overseas employment agreement that has become common in the postwar years. The contract pro-

vided for the transportation of the employee and at least one dependent member of his family. It also provided, in addition to extended salary rights, for various arrangements for retransportation of the employee and the family member in the event the employment ceased, depending upon the ground for such cessation.

After the work commenced in Turkey, plaintiffs, as a body, except for plaintiff Abbott, called on Mr. Stuck, the project manager, made to him complaints concerning safety conditions in the mine and also repeated complaints they had made earlier to the new general superintendent of the project, one Mr. Goodfield. Mr. Stuck, after deliberating on the matter, decided that the men who had called on him should be discharged. When the plaintiff Abbott learned of this, he asked to be discharged too, alining himself with the group that had called on Mr. Stuck.

The issue in the case is whether there was any evidence in the record to support the jury's finding that the men were not discharged in good faith, that is, as a result of a genuine dissatisfaction with the work or conduct of the men, rather than for some other reason not authorized by the contract. It is submitted that there is no such evidence in the record and that the judgment in favor of plaintiffs, who recovered damages, should be reversed, the verdict set aside and the complaints dismissed.

The contract sets forth in great detail many grounds, including dissatisfaction, for discharging the employee. The reason is evident. These men were to be employed overseas, supervising natives of Turkey. There might be many occasions not only for dissatisfaction with the competency of men in their work, but also for dissatisfaction in the relationships among the men with their supervisors, with the native workers, and with agencies of the Turkish government. Moreover, the contract explicitly provided that the employment was for no definite period. Such circumstances and such provisions have become common, almost stereotypes, in overseas construction contracts.

Affirmatively, the contract required that the employee was "to abide by and be subject to all rules, regulations and requirements of Employer, its officers, agents and supervisory employees".

The contract then provided that employment might be terminated if the employee: "does not abide by all the rules, regulations and requirements of Employer, its officers, agents and supervisory employees". And, after providing other grounds for termination, the agreement then provided that the employee's services might be terminated: "If the Employee in any respect fails to meet the standards or requirements of Employer, EKI or the Turkish Government; or if the performance or the personal conduct of the Employee is unsatisfactory to Employer, EKI or the Turkish Government".

These men were not discharged because they did their construction supervisory work in an unsatisfactory manner. About that there is no issue. Nor were they discharged because of their personal conduct in their private affairs, and about that there is no issue. Nor is it an issue in this case whether the safety conditions in the mines were as plaintiffs portrayed them. What is an issue in this case is (1) whether Mr. Stuck's dissatisfaction with plaintiffs in organizing themselves into a body to complain to him about conditions in the mines and in not limiting their complaints to the new general superintendent, Mr. Goodfield, was the reason for the discharge, and (2) whether that reason comes within the provisions of the contract.

On both issues indicated above the proof is one-sided, uncontradicted, and indeed, uncontradictable. Obviously, in the running of a large project in a foreign country, using native laborers, Mr. Stuck was entitled to be dissatisfied

with what, justly or unjustly, appeared to him to be a "ganging-up". It is not for courts or juries to determine whether Mr. Stuck behaved badly or autocratically. The contract was perfectly clear in reserving to management the unqualified power to determine what was satisfactory conduct on the part of the employees in their personal affairs, in their work, and certainly, therefore, in the area of relationships among the men and their supervisors.

The undisputed facts are that these men called on Mr. Stuck at night, after Mr. Stuck had prepared to retire; they had presented their complaints as a body; they said that their repeated complaints to Mr. Goodfield, the general superintendent, and Mr. Stuck, had gone unsatisfied; and they were afraid of the consequences of continuance of the mine conditions. Disputed, but immaterial, because surplusage, is the testimony whether they made personal complaints about the general superintendent, Mr. Goodfield, or whether they made any threats. The later joining of the group by plaintiff Abbott, who asked to be discharged, is evidence corroboratory of the fact that the men were acting in concert for the purpose of pressing their will (perhaps with great justice on their side) upon the project manager. That is the reason he discharged them and that reason actually meets each of the conditions in the contract quoted above. This was personal conduct that Mr. Stuck found objectionable. This was a failure to abide by the requirements of the employer, and this was, therefore, performance of duties or personal conduct found unsatisfactory by the employer.

So long as the project was to continue, and did, it is obvious that plaintiffs would not have been discharged except for dissatisfaction with their personal conduct and their failure to abide by requirements. What kind of self-injuring perversity would it be to discharge the bulk of a supervisory staff in Turkey and incur the hazards and the expense of recruiting a new staff from overseas, except for dissatisfaction with conduct or performance. This would make neither sense nor reason. The only reason that the jury must have gone astray in this case is that counsel in trying the case successfully diverted them from the employer's very broad rights under the contract, to the issue whether the complaints about mine conditions were justified. (Accord: *Olson* v. *Arabian Amer. Oil Co.*, 97 F. Supp. 801, affd. 194 F. 2d 477, certiorari denied 344 U. S. 817.)

The *Olson* case is quite parallel. It, too, involved an overseas employment contract, but with an airplane pilot. The contract, like those in our case, had broad provisions permitting termination of employment in the event of dissatisfaction. After Olson was discharged, he sought to create an issue of fact whether he had been discharged for dissatisfaction. He had made protests to his supervisor. The protests related to the failure to adopt certain precautions in the maintenance and navigation of the employer's planes. The court, in granting summary judgment in favor of the defendant, said: "If the Court were to be permitted to draw an inference from the situation as herein disclosed, it would be this: The Company was concerned in procuring pilots of demonstrated capacity to fly its planes as a private carrier in (to us) a remote and primitive part of the world. The process of selection was careful and consumed, as to the plaintiff, about four months. Having hired such a person, it transported him to the place of operation and agreed to pay for his services not less than $880.00 per month, and he functioned as contemplated for about six months. It seems fairly obvious that the employer would rather retain a qualified and by then locally experienced pilot, than to dispense with his services at its own considerable cost as specified, and to procure a successor. If this is so, it would result that the defendant's election to terminate the

plaintiff's employment was not a matter of indulging a whim, but of yielding to the promptings of seeming necessity. These are practical reasons, I think, for giving to the contract that effect which its plain terms require." (P. 803.)

The fact is that in this kind of contract the employer has almost an absolute right to discharge. It is not quite absolute, since there may be reasons wholly unconnected with the employee or his work which do not give a right to the employer to discharge " for cause", even within the very broad meaning given that term in the contract. On the other hand, the intent and the language of the contract are effective to give the employer a right to discharge for any species of dissatisfaction with the employee or his work, however baseless, however unreasonable, and however unjust. It is quite clear that the contract left no gaps in the area of dissatisfaction which would entitle the employer to discharge an employee. The employer may, therefore, discharge because the employee complains, because he complains in concert with his fellows, or because the employer fancies that he does. To all this the employee subscribed. What is involved in contrasting discharge for cause with discharge without cause under the contract is not nonpayment for services, nor termination of a fixed period of employment, because the contract provided for no fixed period of employment, but only varying measures of " severance pay " and transportation allowance. This explains the apparent severity of the contract in granting such broad authority in the employer to discharge for cause, grounds which are so defined as to include every species of dissatisfaction.

Accordingly, the judgment in favor of defendant against the plaintiff Abbott should be affirmed, the judgment in favor of the remaining plaintiffs against the defendant should be reversed, the verdict set aside and their complaints dismissed.

Peck, P. J., Cohn, Callahan and Botein, JJ., concur in decision; Breitel, J., dissents in part, votes to affirm judgment in favor of defendant as against plaintiff Abbott and otherwise reverse and dismiss complaint of remaining plaintiffs.

Judgment, so far as appealed from, affirmed, with costs.