**STATE of Iowa, Plaintiff,**

**v.**

**Vincent STARZINGER, Edwin B. Carpenter and James Evans Cooney, Trustees of the Starzinger Cherry Place Trust, Defendants-Appellees,**

**and**

**Hamilton Funeral Chapels, Inc., Defendant-Appellant.**

**No. 54080.**

Supreme Court of Iowa.

Sept. 24, 1970.

Williams, McWilliams & Hart, Des Moines, for defendant-appellant.

Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for defendants-appellees.

Raymond Rosenberg, Des Moines, for plaintiff.

LARSON, Justice.

This is an appeal from a declaratory judgment entered in the Polk County District Court wherein it was held that the defendants Vincent Starzinger, Edwin B. Carpenter and James Evans Cooney, Trustees of the Starzinger Cherry Place Trust, have the right and power under and pursuant to Provision (12) of their lease with defendant Hamilton Funeral Chapels, Inc. to terminate the lease in the event that the plaintiff State of Iowa should proceed to acquire the leased premises under its power of eminent domain, and that, in the event of the exercise of that power to terminate, the defendant Hamilton Funeral Chapels, Inc. shall thereafter be without a compensable interest in the leased premises, and that the State of Iowa would then have no authority to compensate the defendant Hamilton Funeral Chapels, Inc. for the taking of its former leasehold interest. Costs were taxed equally against the defendants. Only the defendant Hamilton Funeral Chapels, Inc. appeals. We affirm.

This cause came before the trial court on August 14, 1969. By stipulation the issues presented were to be resolved solely on the pleadings, the written briefs and arguments, and other matters contained therein, without oral testimony or evidence. This stipulation revealed and the trial court found that the Starzinger Cherry Place Trust was established in March 1954 as recorded in Book 2667 in the County Recorder's office of Polk County, Iowa, on April 6, 1954; that this trust is the owner in fee simple of the real estate involved in this action described as "Lots 1, 2 and 3, Block 10, in H. Lyon's Addition to the Town of Des Moines, an official Plat, now

included in and forming a part of the City of Des Moines, Polk County, Iowa"; that on December 2, 1959, the trustees entered into a written lease agreement with one Joseph M. Conley as lessee of these premises, and that the defendant Hamilton Funeral Chapels, Inc. is the consent assignee of that lease and owns all lessee rights therein; that the plaintiff State of Iowa, in attempting to acquire the entire property, has employed appraisers to appraise it and undertaken negotiations with both defendants 'herein seeking to acquire all interests in that property, and has made preparations to acquire it by purchase or condemnation; that it appears from Provision (12) of the lease that lessors *have the option to terminate* the lease in the event that *the plaintiff State shall proceed to acquire* said property under its power of eminent domain.

In its conclusions of law the trial court held (1) that it had jurisdiction of the parties and the subject matter; (2) that Provision (12) of the lease agreement between defendants clearly evidences the intention of the parties to permit the lessor to terminate said lease in the event the State should proceed to acquire the leased premises under its power of eminent domain; (3) that when the words used in this provision are assigned their plain and ordinary meanings in the context in which used, and when read in light of the entire lease agreement, it is clear and unambiguous; (4) that this provision is valid and enforceable; (5) that the operative effect of such a lease provision is to terminate the leasehold interest upon the exercise of the power conferred thereunder, thereby depriving the lessee of any compensable interest in the leased premises; and (6) that in the event the lease is so terminated, the State is without authority to compensate the lessee in any way for the taking of the leased premises. We agree with these conclusions.

The lease involved herein, attached to plaintiff's petition and referred to as Exhibit "A", was extensive. Provision (12) thereof, which is of primary importance, provides: "In case the estate hereby created shall be taken from the Lessee by process of law, or by proceedings in bankruptcy or insolvency or otherwise, or in case the Lessee makes an assignment for the benefit of creditors, or commits any act of bankruptcy, the Lessors shall have the right at any time thereafter, notwithstanding any license or waiver of any prior breach or condition, without any notice or demand, to enter upon the premises and thereby terminate the lease and determine the estate hereby created."

Perhaps we should also note here the words of Provision (13) which provides: "In event only a part of said premises is *condemned* for any public purpose, this lease shall continue in force as to the remainder of said premises, PROVIDED, HOWEVER, that a reduction in rent shall be given to Lessee in the proportion which the number of square feet taken, bears to the total number of square feet of the leased premises." (Emphasis supplied.)

Although numerous assignments of error are set forth in appellant's brief and argument, they are predicated upon two contentions: (1) that Provision (12) does not relate to condemnation proceedings, but only to acts of the lessee which could prejudice the lessor and give lessor the right thereafter to terminate the lease; in other words, the provision "In case the estate hereby created shall be taken from the Lessee by process of law" does not justify a finding that the parties referred to or meant a taking by eminent domain proceedings; and (2) that the wording used would not permit a finding that the lease could be terminated by lessor at the time of the taking, but only after the taking, and that under property law at the time of the taking there was a compensable interest in lessee.

I. In determining the meaning of the broad phrase "taken from the Lessee by process of law", the trial court applied the "plain meaning" rule. See B–W Acceptance Corp. v. Saluri, 258 Iowa 489,

495, 139 N.W.2d 399, 403; Darnall v. Day, 240 Iowa 665, 670–671, 37 N.W.2d 277, 280; Carson v. Great Lakes Pipe Line Co., 238 Iowa 50, 53, 25 N.W.2d 855, 857; Carroll Weir Funeral Home v. Miller, 2 Ohio St.2d 189, 207 N.E.2d 747, 749. Clearly, as used in lease Provision (12), the intent of the parties was to include every taking involving the use or potential use of the State's authority, and contemplated a taking of the whole estate created by the lease by eminent domain or condemnation proceedings although not specifically named in this provision. Any indication that this failure disclosed an intent not to include such taking, it seems, is nullified by the use of the words "condemned for any public purpose" in the next provision, No. (13), of this lease. Therein reference is made to a partial taking of the estate created by the lease. Provision (11) also refers to lease expiration, "by lapse of time or for any cause", showing termination by other than completion was contemplated by the parties as shown by Provisions (12) and (13).

■ When the court is asked to interpret a contract which the parties made for themselves the object is to ascertain the meaning and intention of the parties as expressed in the language used.

We have said that in determining the actual significance and proper legal meaning of the agreement, extrinsic evidence throwing light on the situation of the parties, the antecedent negotiations, the attendant circumstances and the objects the parties were striving to attain is necessarily regarded as relevant. See Hamilton v. Wosepka, 261 Iowa 299, 306–307, 154 N.W.2d 164, 168–169.

■ Here the stipulated facts did not bear on these factors. In these circumstances it is the court's duty to give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction. We will not resort to rules of construction where we thus find the intent of the parties is expressed in clear and unambiguous language. Bruhl v. Thul, 257 Iowa 889, 892–893, 134 N.W.2d 571, 573–574, and citations. Also see Greenberg v. Alter Co., 255 Iowa 899, 904, 124 N.W.2d 438, 441.

By reading Provisions (12) and (13) together we can reach no other conclusion than that a taking by condemnation was intended by the parties to this lease and was included therein by the use of the words "by process of law", and find no reasonable or plausible explanation for its exclusion from that provision of the contract.

As bearing on this question, also see Vol. 34, Words and Phrases, page 30 in 1970 Cumulative Annual Pocket Parts, citing under "Process of Law" the recent case of Independence Flying Service, Inc. v. Abitz (Mo.), 386 S.W.2d 399, 404, which held that "process of law" referred to legal process issued by court, executed by officer of law, for enforcement of right to possession, following entry of court judgment. Obviously, the taking of property by condemnation does involve elements which are usually and ordinarily understood to fall under the general term "process of law." True, the process used in taking under condemnation proceedings and the taking after bankruptcy or attachment may be different as to time and notice, but the fact that the drafter of this provision could have noted those differences and could have provided for self-destructive provisions in condemnation matters does not change what we believe is a correct interpretation of the "plain meaning" rule.

The plain meaning of Provision (12) then appears to be that when the lessee's interest in the premises is taken either by condemnation or by proceedings in bankruptcy or insolvency, or is assigned for the benefit of creditors, the lessor may at the time terminate the lease and lessee's interest in it. Nothing in this provision indicates lessee has any remainder interest in the premises subsequent thereto.

**II.** It is not disputed that lessee's leasehold interest herein is property. Thus, unless barred by the terms of the lease, a leasehold interest when taken for public use would entitle lessee to compensation. This is well established property law. Our Iowa constitution, Article I, Section 18, provides that private property shall not be taken for public use without just compensation being paid therefor. See R & R Welding Supply Co. v. Des Moines, 256 Iowa 973, 976, 129 N.W.2d 666, 668, and citations. But, as indicated, property rights of this nature are subject to contractual provisions in leases such as we have here. The terms of the contract, therefore, must control.

The lease here does not contain the ordinary self-destructive provisions. It merely provides that if the leasehold is taken from the lessee by condemnation proceedings, the lessor shall have an option, without notice or demand, to enter upon the premises and thus terminate the lease and all rights held by lessee under the lease. Appellees contend these contractual provisions govern, are clear, and will under these circumstances terminate the lessee's interests when the premises are taken by the State.

Appellant contends under the law of future interests there would exist at the time of condemnation a leasehold estate in lessee and, since lessor could not exercise its option until after the condemnation, the lessee until that time had a compensable interest in the condemned estate, citing Vol. 2, Powell on Real Property (1967), § 188, pp. 54–58.1; 33 Am.Jur., Life Estates, Remainders, and Reversions, §§ 204, 205, 207, 208; 43 Iowa L.Rev., p. 282. But see Vol. 1, Simes and Smith, The Law of Future Interests (2d Ed.), § 281, p. 327.

The contention is not new and has been duly considered by other courts under similar circumstances. See 96 A.L.R.2d 1154, 1155, 1156; Carroll Weir Funeral Home v. Miller, supra, 2 Ohio St.2d 189, 207 N.E.2d 747. These authorities point out that such property rights are properly governed by contract and that the lessor and lessee may, by including properly-worded provisions in the lease, provide that upon appropriation of the property under eminent domain lessor may at his option terminate the lease and, if lessor does exercise that option, lessee would have no property right in the premises and would have no right to compensation. We are satisfied here the rights of the parties as to these premises, pursuant to condemnation by the State, are governed solely by the provisions of the lease agreement.

**III.** Although the use of self-destructive or automatic provisions in lease agreements are usual when the leased premises are taken under condemnation proceedings, it is well settled that other provisions of the contract may also provide for lease termination. Where a lease, under which a tenant holds, provides that the lessor has the option of terminating the lease in the event the property is subsequently taken by eminent domain proceedings, and where upon proper notice by the lessor of his intention to terminate the lease, the effect of exercising that option is to terminate the lease and bar the lessee from sharing in the damages awarded for the condemned property. Carroll Weir Funeral Home v. Miller, supra, 2 Ohio St. 2d 189, 207 N.E.2d 747; Strazzulla Bros. Co. v. Fargo Real Estate Trust (1945, C. A.1), 152 F.2d 61. Also see 96 A.L.R.2d 1154, 1155, 1156.

The author of comment C, § 9[a], 96 A. L.R.2d 1155, in regard to optional termination clause of rights of lessee, states: "Where a lease, under which the tenant holds, provides that the lessor has the option of terminating the lease in the event the property is subsequently taken by eminent domain proceedings, and it further appears that the lessor has given such notice of his intention to terminate as may be required by the particular lease, it has been held that the lessor by exercising his option to terminate bars the lessee from sharing in the damages awarded for the condemnation of property", citing Strazzulla

Bros. Co. v. Fargo Real Estate Trust, supra, which held that the lessor by notifying the lessee that he was terminating the lease effectively barred the lessee from sharing in the condemnation award.

In Carroll Weir Funeral Home v. Miller, supra, similar problems were presented to the court by an action for a portion of a condemnation award. Therein the court granted lessor's motion for summary judgment and directed the award be made to lessor only. Both the Ohio Court of Appeals and the Supreme Court affirmed, holding that the lease, if the building should be "condemned by public authority", was intended by the parties to include appropriation of property by eminent domain and that the exercise of the option barred lessee from participating in the award. It was also observed therein that a lessee has a property right in a leasehold and, without an agreement to the contrary, would be entitled to compensation if the property was appropriated by eminent domain.

The test, it said, was that where reasonable minds could only conclude from the terms of the lease that lessor retained an option to terminate the lease and by exercising it cut off lessee's claim to participate in the condemnation award, a decree and judgment to that effect was proper.

The court then announced what we believe is the better rule, that where the parties to a lease provide that the lessor at his option may terminate the lease if the leased premises are taken by eminent domain, and the property is appropriated, and the lessor properly exercises his option, the lessee no longer has a property right in the premises and has no right to share in the condemnation award.

There as here, on the effective date of the appropriation of the premises appellees had, by the provisions of the lease, the option to terminate the lease. There as here, they exercised this option by serving notice on appellant that the lease would terminate. The court then held lessee's property right was terminated at the time of taking and it could not share in the award.

■ In the case at bar appellant has been notified that when this premise is appropriated by the State, the lessor will exercise its option to terminate the lease and thereafter no property right of the lessee will be involved in the taking and it will have no compensable interest which can be acquired by the State. Exhibit "B" was a letter written to plaintiff on September 13, 1968, advising that appellee's option would be exercised.

Appellant would have us place considerable importance to the use of the word "thereafter" in Provision (12), but we cannot attach the significance thereto necessary to hold here the clearly-expressed option would not be effective to terminate the lease until after a taking by condemnation. Provision (12) must be construed as giving the lessor an option to terminate the lease when condemnation proceedings are commenced against the entire premises, and that since it has properly evidenced its intention to do so, the taking by the State would terminate lessee's rights therein and the State would be without authority to compensate the lessee for any property right taken. The trial court's judgment must, therefore, be affirmed.

Affirmed.

All Justices concur except MOORE, C. J., who takes no part.