Gale E. ALLEN, Appellant,

v.

**HIGHWAY EQUIPMENT COMPANY,**
**Appellee.**

No. 56989.

Supreme Court of Iowa.

Feb. 18, 1976.

James W. Crawford and Mark Belz, of Keyes & Crawford, Cedar Rapids, for appellant.

Patrick M. Roby and Robert O. Daniel of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Plaintiff, Gale E. Allen, brought a law action seeking damages from defendant, Highway Equipment Company, on the theory defendant had breached a written contract of employment entered into by the parties by the termination of Allen's employment before the termination date set forth in the agreement. The matter reaches this court on Allen's appeal from an adverse ruling of the trial court on defendant's motion for declaratory judgment.

The appeal presents two questions for review: (1) whether under the terms of the contract the parties have the power individually to voluntarily terminate employment prior to the date of the contract's expiration and (2) if paragraph 7 of the contract does in fact delegate this power, does the existence of paragraph 3 (which makes the contract one of employment for a definite term) render the contract as a whole contradictory or ambiguous?

Plaintiff was hired in an "executive and managerial" capacity by Highway Equipment Company, an Iowa corporation in Cedar Rapids. February 19, 1965, the parties entered into a contract entitled Employment Agreement, which set forth the terms and obligations of the company's employment of plaintiff. Most pertinent to the issues before the court are the following paragraphs of the contract:

"* * *

"3. *The term of employment* in an executive capacity under the provisions of this agreement *shall be and extend from November 1, 1964 to and including October 31, 1975.*

"4. For a period of ten (10) years from and after the date the said Allen ceases to perform the services in an executive capacity as provided herein, the company hereby engages the services of the said Allen in an advisory and consultive capacity * * *.

"5. * * *

"6. * * *

"7. If, during the period the said Allen is serving in an executive capacity under the terms and provisions hereof, the employment of the said Allen *shall be terminated either by the voluntary act of the*

*said Allen or by the act of the company,* except in the case of misconduct as hereinafter defined, and the said Allen is willing thereafter to render advisory and consultive services as provided in paragraph 4 hereof, then the said Allen shall be entitled to and receive monthly payments as hereinafter provided:

" * * * [then follow 11 subparagraphs setting forth a formula of increasing compensation for advisory and consultive services for each year of Allen's employment for a period of 120 months after "such termination"].

"8. * * *

"9. Notwithstanding any of the other terms and provisions hereof, it is understood and agreed by the said Allen and the Company that any payments to be made to the said Allen upon termination of employment in an executive capacity, *whether voluntary or involuntary* or as the result of death, shall be subject to modification * * * ." (Emphasis supplied).

Plaintiff remained in the company's employ until November 16, 1972, at which time he was unilaterally discharged by the company's president, C. H. Jordan. The company thereafter paid plaintiff from January 1, 1973, through July 15, 1973, some $3000.00 under paragraph 7(i) of the contract providing for Allen's availability in an "advisory and consultive capacity."

July 23, 1973, plaintiff filed a petition alleging the company breached the contract of employment, claiming $140,198.40 in damages. Plaintiff's claim for damages is based on an alleged loss of salary from November 16, 1972, through October 31, 1975, at $30,000 per year plus an alleged loss of right to receive payments from defendant under paragraph 7(k) of the employment agreement at the rate of $705.19 per month for a period of 120 months following termination rather than under paragraph 7(i) which provided payments of $536.87 per month for such period and an alleged loss of his right to receive a bonus in the approximate amount of $30,000. He

makes no claim for compensation for services performed in his executive and managerial capacity from November 1, 1964, through November 16, 1972.

The company affirmatively alleged in its answer that the employment contract was subject to "termination at the discretion of either party at any time prior to the termination date and that certain provisions were made therein in the event of termination by either party under certain conditions."

October 9 the company filed a motion for a declaratory judgment, in which the district court was requested, in relevant part, to determine if the terms of the agreement as provided in paragraphs 7 and 9 allowed either party to terminate employment "without case or without notice." Plaintiff's resistance to this motion was based upon paragraph 3, which, it was contended, was contrary to the company's interpretation of paragraphs 7 and 9. Plaintiff argued in the alternative that if the court interpreted paragraphs 7 and 9 as asserted by the company, then there was "an obvious contradiction or ambiguity on the face of the Agreement" between paragraph 3 and paragraphs 7 and 9. This ambiguity, it was argued, should be resolved against the drawer of the contract, defendant company.

In its ruling filed December 21, 1973, the trial court expressed the view a motion for declaratory judgment under rules 261 and 262, Rules of Civil Procedure, was not the appropriate procedure for disposition of the matter raised by defendant but that rule 105, R.C.P., was the proper method of bringing the matter to the court's attention. The court then set out paragraphs 7 and 9 of the employment agreement and concluded "that the terms of the contract permit the voluntary termination of the contract by either party to it when construing the terms of the contract as a whole." The court also decided that since the employment of plaintiff had been terminated between November 1, 1972, and October 31, 1973, defendant should pay Allen the sum

of $536.87 per month "if the plaintiff is willing to render advisory and consulting services" (paragraph 7(i) of employment agreement).

The propriety of the trial court's selection of procedure is not challenged by either party to this appeal.

The extent of the hearing held on defendant's motion referred to in the trial court's ruling is not disclosed by the record before us. Apparently, no evidence was offered either to sustain or resist the motion.

I. Plaintiff asserts paragraph 3 of the contract renders it one of employment for a definite term. In connection with this, it is argued the "trial court made several unwarranted assumptions" in concluding paragraph 7 permitted termination at will, "each of which [assumption] was [a] necessary step in reaching its improper conclusion." It is first pointed out paragraph 7 is not an "empowering clause" giving defendant express authority to terminate plaintiff's employment. Rather, it "states the conditions necessary for plaintiff's payment as an advisor following his executive term." Thus, the inference of "an empowering clause to terminate from such a conditional clause, as the lower court did, constitutes unsound construction," particularly in view of paragraph 3.

Furthermore, plaintiff contends even if such termination power may be inferred from paragraph 7, it does not imply that such an act can take place at the whim of the employer. "Were Paragraph 7 to be interpreted as permitting the company to discharge Allen under circumstances constituting legal cause, the entire contract would be preserved * * *."

Finally, plaintiff argues the trial court, "by reading the terms 'without cause' and 'at will' into Paragraph 7, * * * has changed the plain and unmistakable language of Paragraph 3", and thus violated the rules of contract construction.

The company maintains that Allen, throughout division 1 of his opening brief and argument, contends the trial court interpreted paragraph 7 of the employment agreement as granting defendant the unilateral right to terminate Allen's employment at will which is in conflict with the provisions of paragraph 3 of the agreement. The company argues this was not the ruling of the trial court from which the appeal stems. In our opinion there is support for the company's position.

However, in response to the company's argument plaintiff, in his reply brief, denies he misunderstands the claim of the company or the ruling of the trial court but insists it is his position that neither he nor the company had the right to unilaterally and without cause terminate the agreement and that the issue is "the unilateral action of the company, not whether it had a unilateral right to terminate the agreement." Stated otherwise, as we understand plaintiff's position, he insists although he or the company had the right to terminate the employment agreement before October 31, 1975, nowhere in the agreement is there any provision which would justify an interpretation empowering either party to terminate the agreement at will and without cause.

As pointed out, the trial court determined that when the employment agreement was interpreted as a whole its terms permitted the voluntary termination thereof by either party. This right to terminate was not limited to one for cause by the court's ruling.

Defendant in its brief and argument goes on to interpret the various paragraphs in dispute to show an intent allowing either party to terminate the employment contract at any time for any reason.

■ "When the court is asked to interpret a contract which the parties made for themselves the object is to ascertain the meaning and intention of the parties as expressed in the language used." *State v. Starzinger*, 179 N.W.2d 761, 764 (Iowa 1970).

■ "The court will not resort to rules of construction where intent of the parties is expressed in clear and unambiguous language. *Gendler Stone Products Co. v. Laub*, 179 N.W.2d 628 (Iowa 1970); see rule 344(f)(14), Rules of Civil Procedure. In the absence of relevant extrinsic evidence, it is our duty, in interpreting a contract, to give effect to the language of the *entire contract* in accordance with its commonly accepted and ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction. *State v. Starzinger*, 179 N.W.2d 761 (Iowa 1970)." (Emphasis supplied). *Kinney v. Capitol-Strauss, Inc.*, 207 N.W.2d 574, 576–577 (Iowa 1973).

■ Along this same line is " * * * the rule that a contract should be read and interpreted as an entirety rather than seriatim by clauses and that the position of clauses in such instrument is not material or controlling. * * * [citing authority]." *Maley v. Kanealy*, 226 Iowa 1266, 1277, 286 N.W. 500, 506, 131 A.L.R. 945, 952. See also *Teig and Johnson v. Speelmon*, 261 Iowa 210, 215, 153 N.W.2d 818, 821 and *Bates v. United Security Insurance Company*, 163 N.W.2d 390, 397 (Iowa 1968).

■ Finally, it is clear the trial court's determination both parties to this contract had the power to voluntarily terminate was a determination of law, since " * * * interpretation, the meaning of contractual words, is an issue for the court unless it depends on extrinsic evidence or on a choice among reasonable inferences from extrinsic evidence. * * * [citing authorities]. Construction, the legal effect of a contract, is always a matter of law to be decided by the court. * * * [citing authorities].

■ "When a case is tried to the court, as here, the distinction has importance in relation to our scope of review. Interpretations of words of a contract by the trial court as trier of fact are binding on us if supported by substantial evidence. * * * [citing authority]. In this case neither party offered extrinsic evidence bearing upon interpretation. The interpretations were not made by the court as trier of fact. Therefore, both interpretation and construction here present issues reviewed as determinations of law." *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975).

■ It is evident this court is faced with the task of interpreting the meaning of a written instrument without the aid of extrinsic facts. Thus, the question is one of law rather than of fact, and the following statement thereby becomes relevant:

" * * * When the question is simply one of construction of a written instrument, unaided by evidence, the question is one of law and not of fact, and the appellate court is not bound by a reasonable construction of the instrument if it believes another construction should be applied. * * * [citing authorities]." *Crillo v. Curtola*, 91 Cal. App.2d 263, 204 P.2d 941, 946.

It is obvious from a reading of the opinion that the court in *Crillo* used the terms "interpretation" and "construction" interchangeably. This conclusion becomes inescapable when attention is directed to this statement appearing at page 946 of 204 P.2d, "The primary question presented on this appeal is the proper *interpretation* of the following sentence appearing in the letter of defendant * * *." (Emphasis supplied).

Consideration of the contract in this light reveals paragraph 3 provides an 11 year "term of employment in an executive capacity." Standing alone, this type of provision has definite legal consequences. Unlike contracts of employment for an indefinite term, where employment is "at will" and terminable "at any time by either party for any reason or for no reason at all," 62 A.L.R.3d 271, citing numerous authorities, including *Hanson v. Central Show Printing Co.*, 256 Iowa 1221, 130 N.W.2d 654, and *Stauter v. Walnut Grove Products*, 188 N.W.2d 305 (Iowa 1971), contracts for a definite term do not leave the parties so unconstrained.

The court in *Edwards v. Morrison-Knudsen Company*, 61 Wash.2d 618, 379 P.2d 735, 738, noted the pertinent rule applicable to the above circumstances appears to be succinctly summarized in 35 Am.Jur., Master and Servant, section 19, page 456, now 53 Am.Jur.2d, Master and Servant, section 27, page 103, where it is said:

■ "A contract of employment which by its express terms is for a definite time or to last until a definite day presents, of course, no problem concerning its duration and termination. The employer has the implied right to discharge the employee for cause, but otherwise the employment cannot be terminated of right during the term of its existence as expressed in the contract. * * * ." See also *Crillo v. Curtola*, 91 Cal.App.2d at 273, 204 P.2d at 947; *Dennis v. Thermoid Co.*, 128 N.J.L. 303, 25 A.2d 886, 887; and *Lavin v. Goldwater*, 366 Pa. 599, 79 A.2d 266, 268.

1A Corbin on Contracts, section 152, page 14, has this statement:

" * * * [I]f the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable by him 'at will' after the employee has begun or rendered some of the requested service or has given any other consideration (or has acted in reliance on the promise in such manner as to make applicable the rule in Restatement, Contracts, § 90)."

■ It follows the effect of paragraph 3, standing alone, would permit the employer to discharge the employee only "for cause" after the employee has begun performance.

Paragraph 3, however, is not capable of wholesale isolation. As defendant points out, "whether in any particular case an employer can discharge his employee without cause, and not incur liability, is a question which is to be resolved with reference to the express and implied terms of the contract." 53 Am.Jur.2d, Master and Servant, section 43, page 118.

In this connection, the contract's paragraph 4 provides for Allen's services in an "advisory and consultive capacity" for a ten year period following the "date said Allen ceases to perform the services in an executive capacity." More important, paragraph 7 provides monthly compensation schedules for this advisory and consultive work, if, during the period Allen was to render executive services, "the employment of Allen shall be terminated either by the voluntary act of the said Allen or by the act of the company, except in the case of misconduct * * * *", and Allen was willing to render such advisory and consultive service. Similar pay provisions are included in this paragraph in the event of Allen's death. Finally, the monthly payments for advisory or consultive service would not be forthcoming if Allen's termination were due to his "misconduct," defined as " * * * any act or acts on the part of the said Allen or on behalf of the said Allen directed toward the company, any officer, director, employee or customer of the company, which under the laws and statutes of the State of Iowa then in force constitute a felony * * *, or any act or acts aforesaid which, although not constituting a felony, shall involve moral turpitude and be detrimental to the business of the company."

Paragraph 9 provides for modification of the monthly payments upon Allen's termination of employment in an executive capacity, " * * * whether voluntary, involuntary or as the result of death, * * * ."

Plaintiff relies heavily upon, and defendant criticizes, *Vogel v. Pathe Exchange, Inc.*, 234 App.Div. 313, 254 N.Y.S. 881 (1932), a decision of the appellate division of the supreme court of New York somewhat similar to the instant one. Plaintiff agreed to sell defendant certain shares in a corporation. Defendant agreed to employ plaintiff in a managerial capacity for a two year period at a certain salary. Plaintiff promised to devote his entire business time to his

managerial duties. In the event of plaintiff's disability for a sixty day period, his death or " * * * the termination of this contract for any cause, Pathe in consideration of the agreement of even date herewith and as payment in addition * * * [to the price per share of the stock sold] shall pay to Vogel or his estate * * * [a reduced weekly sum] during the unexpired term of this contract."

After serving some nine months, plaintiff's employment was terminated for an alleged breach of contract. Nevertheless, the issue determined was whether the contract was terminable at will. The trial court decided it was; the appellate court disagreed, stating:

" * * * [I]f this employment contract is to be read as one terminable at will, it may just as well never have been written. * * * That employment contract fixed the period of two years as its life, and fixed the stipulated salary per week. It also required plaintiff not to engage in or participate in any business excepting on behalf of the defendant. It then provided for two things that would ordinarily terminate the contract as a matter of law; one, disability, and the other, death. For both of these events there was an agreement to pay to plaintiff during disability the lesser sum, even though that disability continued for the balance of the two years, and to plaintiff's estate in the event of his death a like lesser sum; but both of these were to be regarded 'as payment in addition to * * [the price per share paid for the stock].' Did the parties intend by the words 'or of the termination of this contract for any cause' to include it as one of the happenings which would carry with it lesser sum only, in any event, when that lesser sum was stated as an additional consideration for the sale of stock? If those words are to be construed as a right to terminate the contract at will, then this contract was conceived in fraud, and there never was any contract of employment." The court went on to hold the words "for any cause" to mean "cause sufficient in law which would justify an employer in discharging an employee." 234 App.Div. at 318, 254 N.Y.S. at 886.

Perhaps more significant is this statement: "Much is said and may be said as to this lesser sum representing stipulated damages upon the termination of the contract for any reason, secret or disclosed; but, taking the context of the contract and the causes that led up to the making of both the contract of sale and the employment contract, it does not seem to me that the parties contemplated its abrogation at the whim of either at any moment subsequent to its making." The court concluded both parties could terminate only for a justifiable reason. 234 App.Div. at 318, 254 N.Y.S. at 887.

A comparison of the facts of *Vogel* to the ones before his court reveals a significant distinguishing aspect. In *Vogel* the payments were additional consideration for plaintiff's sale of stock to defendant. The New York court stressed "the context of the contract" and the "causes" for the employment and stock sale contracts. Such does not appear in this case. *Vogel* not only promised to render services as an employee of Pathe Exchange but in addition sold to the defendant some 2000 shares of stock in another corporation in exchange for Pathe's promise to employ him for a period of two years. We are not persuaded that the opinion is controlling here.

Defendant cites *Orkin Exterminating Co., Inc. v. Burnett*, 259 Iowa 1218, 146 N.W.2d 320, a case in equity in which plaintiff company sought to enforce a covenant not to compete in which defendant employee agreed "that on the termination for any cause whatsoever of his employment with the Company, he will not * * * [compete]." Although the contract the company terminated was year-to-year, it was also provided employment " * * * may be terminated by either party, at any time hereafter, by giving the other party notice of his or its intention to terminate same." This court noted the company "merely fol-

lowed mutually-accepted contract provisions" in terminating the contract and stated:

"Although it is true the parties here had been working under an agreement which was to 'remain in full force and effect for one year' and continue from year to year thereafter, we find nothing to indicate that provision avoided the right of either party 'for any cause' to terminate the agreement" 259 Iowa at 1227, 146 N.W.2d at 326.

Plaintiff argues the *Orkin* case does not present a rule applicable to the matter now before the court. In our opinion the *Orkin* decision is helpful but not decisive of the issue here.

Under the terms of the present employment agreement the company promised to employ Allen in an "executive and managerial" capacity for a definite term of 11 years at a determinable salary in exchange for Allen's performance in such capacity for the specified time. There is no argument Allen entered into performance of the duties assigned to him and continued thereafter until November 16, 1972. He was paid the agreed amount for those services. However, the power or option was expressly reserved to each of the parties by the terms of said agreement to terminate Allen's employment in the executive capacity before October 31, 1975. This was not the power to cancel the entire contract. Neither of the parties had an unlimited option.

In the event the company elected to exercise its option to cancel or terminate Allen's employment in an executive capacity before October 31, 1975, the company remained obligated to employ him in an advisory and consultive capacity for a further period of ten years at a specified salary. On the other hand, if Allen chose to terminate his employment with the company before October 31, 1975, he was obligated to perform services in an advisory capacity. If Allen elected not to serve in such advisory capacity following either his voluntary termination or termination by act of the company he was not entitled to any compensation

after termination of his employment in the executive capacity. This option did not render the employment agreement illusory.

The record here does not present a factual situation governed by those cases dealing with contracts of employment which are to be continued for a period of time that is either definite or capable of being determined in which event the employment is generally held not to be terminable "at will." See *Edwards v. Morrison-Knudsen Company*, 61 Wash.2d 618, 379 P.2d 735, 738, and other authorities heretofore cited in this opinion. Neither is it a situation to be determined in accordance with the holdings of those cases where the employee gives some consideration in addition to the performance of services assigned nor by those decisions arising from cases where the employee has entered upon performance without having made any promise, express or implied, to begin or continue the services which ordinarily results in the employment being terminable "at will." See 1A Corbin on Contracts, section 152, page 13.

Rather, the present case presents a situation where there is a valid, enforceable contract of employment supported by consideration in which the option or choice was expressly reserved to each of the parties to terminate the same before the date set in the agreement, an important provision in the contract of employment. *Id.*, section 167.

The question is whether in the case before us termination of the employment can be accomplished without liability in the absence of factual circumstances constituting legal cause.

It is our opinion when the contract is interpreted as a whole either party has the power individually to voluntarily terminate the employment at will without cause prior to the expiration date fixed in the agreement.

We have studied all the authorities cited by plaintiff in support of his contentions. None persuade us to hold that the trial court erred in its interpretation.

II. In his second issue presented to this court, plaintiff argues if paragraph 7 in fact does allow termination at will, then there is an ambiguity in that this paragraph conflicts with paragraph 3. It is contended paragraph 7 plays a subordinate role to paragraph 3.

While such fact does not appear of record (as pointed out by the company), plaintiff asserts since defendant prepared the contract, the ambiguities should be resolved against the company.

Defendant argues the contract is not ambiguous. It is further contended plaintiff by accepting paragraph 7 monthly payments is estopped to deny termination was valid. Plaintiff concedes this latter assertion was not presented in district court.

■ Clearly, the fact defendant company may have prepared the contract and any issue of estoppel are not properly before the supreme court. " * * * As these matters are not part of the record we cannot consider them. We must accept the record as made by counsel. * * * [citing authorities]." *Cale v. Great Western Supply Co.*, 255 Iowa 237, 238, 122 N.W.2d 455. See also *State v. Munn*, 216 Iowa 1232, 1238, 250 N.W. 471, 474 and *Culligan Soft Water Service v. Berglund*, 259 Iowa 660, 664, 145 N.W.2d 604, 606.

The first division herein effectively resolved any issue of ambiguity, which imperfection " * * * may be said to appear when, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one. * * * [citing authorities]." *Morris Plan Co. v. Bingham F. and Gr. Co.*, 259 Iowa 404, 415, 143 N.W.2d 404, 412. See also *Gendler Stone Products Co. v. Laub*, 179 N.W.2d 628, 631 (Iowa 1970), and *Brammer v. Allied Mutual Insurance Company*, 182 N.W.2d 169, 172 (Iowa 1970).

It cannot logically be said there is a "genuine uncertainty" where either of two meanings may be proper. The contract is unambiguous.

This court has fully considered every contention and argument urged by plaintiff as a basis for reversal. We are convinced the trial court was correct in its rulings.

The case is therefore—Affirmed.